Argued November 6, 1895; decided January 13, 1896.

## STATE v. SECURITY SAVINGS COMPANY.
[43 Pac. 160.]

1. FINAL ORDER—APPEAL—CODE, § 535.—An order overruling a demurrer to a bill of discovery, and requiring defendant to answer interrogatories set forth therein is "final" for the purposes of appeal.

2. REQUISITES OF A BILL OF DISCOVERY UNDER SECTION 3143, HILL'S CODE.—In order to sustain a proceeding under section 3143 of Hill's Code, authorizing a bill of discovery, with interrogatories attached, whenever the governor "is informed or has reason to believe" that any bank has any money or other property that has escheated to the state, the bill and interrogatories must be directed to some specific fund alleged to be in the custody of the bank, and must show that the state has a cause of action as to such fund, and, further, that the desired information will aid such action. Under the section cited a general inquisitorial proceeding cannot be maintained.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This is a proceeding brought by the district attorney of the fourth judicial district, by direction of the governor, to ascertain whether the defendant bank has in its possession on deposit or otherwise any funds or other property which has escheated to the state. The information, after averring the official title of the informant, and that it is filed by direction of the governor, alleges, in substance: That the defendant is

a private corporation organized and existing under
the laws of this state, and is now and has been for
four years last past engaged in a general banking
business in the City of Portland; that during such
time divers and sundry depositors in defendant's bank
have, since the date of making their deposit, died intestate,
without heirs, leaving sundry and divers amounts
of money and personal property on deposit and in the
custody of defendant which has escheated to the state,
the exact amount thereof, the names of the depositors
and date of deposit being to the informant unknown;
that in order to recover such escheated property for
the use and benefit of the state it is necessary for
the informant to bring and maintain an action at law
against the defendant, and in order to enable him to
do so "it is necessary and proper for plaintiff to learn
from defendant the name of the depositor, the amount
and nature of the deposit, the date of deposit of such
funds and other property as now are in the possession
of the defendant, which have escheated to the state";
that he intends and proposes, as directed by the governor,
to commence an action at law pursuant to the
provisions of chapter XXV of the Miscellaneous Laws
of Oregon for the recovery of such escheated funds
and other property "as may be found in the custody
of said defendant bank," but that he is unable to do
so without full discovery from said bank, wherefore he
prays an order of the court directing and requiring
the defendant, its officers and agents, to appear at a
time certain, and answer under oath the information
and the several interrogatories contained therein.   The
first, second, third, fourth, sixth, and seventh of such
interrogatories   require   the   defendant   to   state   the
names of all persons depositing or leaving money or
other property with it whose deposits,—whether evi-

dence by an open account, certificate of deposit, suspense account, or otherwise,—have been dormant or uncalled for, or upon which no payments have been made, or against which checks have not been drawn, for a period of seven years, together with a description of the property or amount of money standing to the credit of each of such depositors. The fifth interrogatory requires the defendant to give the names of any and all depositors whom it knew or believed to have died prior to August first, eighteen hundred and ninety-four, (the date of the commencement of this proceeding,) and against whose accounts no checks had been drawn on deposits made by any executor, administrator, or other representative, and the amount standing to the credit of each of such depositors. The eighth requires the defendant to give a list of any money or property held by it or in its possession at the time this proceeding was commenced which it thinks should escheat to the state. And the ninth requires the bank to give the name, date, and amount of deposit of any and all persons whom the defendant knew or believed had died intestate without heirs in this state, and the date of such death as near as it might know or be informed. The defendant demurred to the information on the ground that it did not state facts sufficient to constitute a bill of discovery, or to entitle the plaintiff to the relief demanded, which demurrer was overruled, and an order entered directing and requiring the defendant to file on or before a certain date fixed in the decree an answer under oath to the information and interrogatories, and especially to answer each and every interrogatory contained in such information. From this order, or decree, the defendant appeals.                    REVERSED.

For appellant there were oral arguments by *Messrs. Joseph Simon* and *Stewart B. Linthicum,* with a brief by *Messrs. Dolph, Mallory and Simon,* and *Williams, Wood and Linthicum,* urging these points.

The principles and doctrines relating to discovery, which have been settled by courts of equity in the past, govern the bill of discovery in this case. In some states, bills of discovery have been abolished by statute; in most, by regulations permitting the parties to testify on their own behalf, and to be called as witnesses by their adversaries, with provisions for compelling the production and inspection of books, documents, etc. Proceedings in relation to much of the ground covered by the bill of discovery have been greatly simplified, and the necessity for a resort to that remedy lessened. It has been decided that where all the grounds upon which a bill of discovery is based have been abolished by statute, the jurisdiction has thereby necessarily terminated; but it has generally been held that these statutory changes have not affected the jurisdiction over discovery, and that the same exists where it has not been expressly abolished: 1 Pomeroy's Equity Jurisprudence, § 193; *Shotwell* v. *Smith,* 20 N. J. Eq. 79. And also that in such cases all the principles of the law of discovery, not modified or abrogated by statute, remain in full force and regulate the action under statutory proceedings: 2 Am. and Eng. Ency. of Law, 210; *Anderson* v. *Bank of British Columbia* (Law Rep.), 2 Ch. Div. 644–658; *Cashin* v. *Cradock* (Law Rep.), 2 Ch. Div. 140–145; *Ingilby* v. *Shafto,* 33 Beavan, 38. It follows conclusively to our minds, and we think the legislature so intended, that the decisions of the courts which have entertained jurisdiction over discovery, and the established principles

appertaining thereto, shall apply to and govern the inquiry under section 3143.

The bill fails to state a case; and does not entitle the plaintiff to the discovery sought, or any discovery or relief whatever. It must state a *prima facie* case. No facts are set forth in the bill as justifying the governor's belief, nor is there any specific statement of any facts either as to whose property it is claimed has escheated, or that can be otherwise considered as constituting a foundation for the bill. Plaintiff has contented itself with the general statement that certain persons have died intestate without heirs, having money or other personal property in defendants's custody, and propounds certain questions, the answers to which it is hoped will afford some foundation for the general allegation and elicit information that may be available in future operations. In an action at law, or in an ordinary suit in equity, a demurrer would lie to a complaint embodying the general and meagre statements of the bill in suit, because no cause of action or suit would be presented thereby. There would be nothing upon which the court could predict a judgment or decree. It would seem that the same observation would apply upon a kindred state of facts to a bill seeking a discovery, unless such suits are excepted from the operation of the general rule. No such exception exists in fact, and there is no good reason why it should. These fundamental principles have remained unchanged, and are as binding today as they have ever been. The rule has been and is, that the bill must at least present a *prima facie* case. A *prima facie* case in this connection imports such a statement of facts as intrinsically shows the existence of a case, and that the discovery sought is both germane and proper: 2 Daniel's Chancery Pleading and Prac-

tice, 1556, 1557 (4th ed.); 2 Story's Equity Jurisprudence, § 1493*a* (12th ed.); 1 Pomeroy's Equity Jurisprudence, § 198; *London* v. *Levy,* 8 Vesey, Jr., 404.

The bill in suit states no case whatever. It is clear from the allegations and interrogations that the hope, not the certainty, that something would result, was the animating motive in the institution of the suit. No action at law may be instituted hereafter, but these whole proceedings may be fruitless in every way except in subjecting defendant to annoyance and expense. The courts early declared their hostility to such practices: *Finch* v. *Finch,* 2 Vesey, Sr., 494; 2 Daniel's Chancery Pleading and Practice, 1556 (4th ed.); 2 Story's Equity Jurisprudence, § 1497 (12th ed.); *Leggett* v. *Postley,* 2 Paige Ch. 602. An examination of the interrogatories will elicit nothing that can be used to support the allegations of the bill, but will forcibly emphasize the application of Judge Story's remarks to this case. Most of the interrogatores are addressed to finding out the names of all persons who have left various forms of property with the defendant for which no demand has been made, and regarding which no dealings have been had, for seven years, and the amount and character of such property. The bill should, perhaps, have stated the grounds of the governor's belief: *Dunlevy* v. *Schwartz,* 17 Ohio St. 640; *Garner* v. *White,* 23 Ohio St. 192. It should also have set forth the names of the persons whose property it is claimed has escheated, and, generally, such facts and circumstances as would show in a *prima facie* manner the existence of a right, and the propriety and relevancy of the interrogatories. It is no answer to say that the bank is named as a defendant; for the bank is concerned only in so far as it may safely pay over the money, and it would seem to have no connection

with any subsequent action at law, as under the statute it is required to pay or deposit the money or property into court. We hazard the opinion that no case can be found in the books where the meagre statements of this bill or their equivalent were held to state a case, nor where the general questions asked were held to be material or proper. If such a case exists we have been unable to find it.

For the state there were oral arguments by *Messrs. Cicero M. Idleman,* attorney-general, and *John H. Hall,* deputy district attorney, with a brief by *Messrs. Hall, Wilson T. Hume,* district attorney, and *George E. Chamberlain,* as follows:

The object of the law is inquisitorial for the purpose of discovering funds which should escheat to the state, and is ancillary to section 3137, of the same act, which provides the manner of procedure after discovery is made. The act is mandatory to the governor, commanding him to act upon the information received, or if he from any cause has reason to believe of the existence of escheated funds in a bank; nor is he required to disclose to the district attorney the source of his information nor the reason for his belief, nor is it necessary for the district attorney to set out any other reason for the bringing of the suit, than the directions of the governor. In the case of *People* v. *Hibernia Saving and Loan Society,* reported in 72 Cal. 21, a case similar to the one at bar, the court say: "But we are clear that the person cited cannot avoid examination by merely pleading that he, or it, has no property subject to escheat. The very purpose of the proceeding is the discovery of those things, knowledge of which would render the proceed-

ing unnecessary. It cannot, therefore, have been intended that the state, or attorney-general for the state, should be compelled to allege and prove the fact, for the ascertainment of which the proceeding is commenced." It cannot, therefore, he successfully contended in this case, as claimed by appellant, that the state must designate the particular money or other property sought, the name of the depositor and of all persons in interest. Were the state possessed of the knowledge of those facts, this proceeding would be wholly unnecessary.

Opinion by MR. CHIEF JUSTICE BEAN.

1. On this appeal two questions have been presented for consideration: *First,* whether the order overruling defendant's demurrer and requiring it to answer the information and interrogatories as prayed for in the bill is an appealable order; and, *second,* whether the information states facts sufficient to constitute a bill of discovery. The right of appeal is purely statutory, and unless the order from which defendant's appeal is taken is a final order, judgment, or decree within the meaning of the statute, the appeal, of course, cannot be entertained. The law, as we understand it, is that an order or decree is final for the purposes of an appeal when it determines the rights of the parties, and no further questions can arise before the court rendering it except such as are necessary to be determined in carrying it into effect: Freeman on Judgments, § 36; Elliott on Appellate Procedure, § 90; *St. Louis and Iron Mountain Railroad Company v. Southern Express Company,* 108 U. S. 24 (2 Sup. Ct. 6). Within this principle we think the present order or decree is final. The suit was brought for

the sole and only purpose of obtaining from the defendant an answer under oath to the several interrogatories, and for no other relief. The information is a pure bill of discovery in aid of a contemplated action at law, asking no relief; and the only litigated question in the case is the right of the informant to the discovery sought. When, therefore, the demurrer was overruled, and the court held that the plaintiff was entitled to the relief demanded, and ordered and directed the defendant to answer the interrogatories, it effectually determined all the issues in the case, and ended the controversy between the parties so far as it could do so, leaving nothing to be done but to enforce its determination as made. No subsequent question could arise in the case except as to the form or sufficiency of the defendant's answers, and, therefore, in our opinion, it was a final order or decree within the meaning of the statute, and consequently appealable; otherwise the defendant would be without remedy by an appeal, though it should be admitted that the order complained of was in violation of its clear legal rights. If, as contended by the plaintiff, before it can appeal it must comply with the order of the court and answer fully the information and interrogatories, an appeal would be a vain and useless proceeding, for the sole object of the suit would have been accomplished, and defendant's appeal could avail it nothing.

2. In support of the demurrer it is contended that the information is insufficient as a bill of discovery, because it does not aver any facts showing a right of action in favor of the plaintiff and against the defendant in aid of which the discovery is sought, while the contention for plaintiff is that the section of the statute under which it was filed does not contemplate a

common-law bill of discovery, but an inquisitorial pro-
ceeding to compel a bank or banking institution to
disclose by answers to interrogatories propounded to
it whether it holds or is in possession of any property
which has escheated or may escheat to the state, in
order that the proper action may be brought in case
escheated property is thus discovered. In a word, the
effect of plaintiff's contention is that the statute is in-
tended to enable the plaintiff to fish for a cause of
action, and not to prove an exisiting case out of its
opponent's mouth, or from documents in its posses-
sion, as is the object and purpose of the common-law
bill of discovery. The statute in question provides
that "when the governor is informed, or has reason to
believe, that any bank, banker, or banking institution
in this state now has or holds on deposit, or other-
wise, any fund, funds, or other property of any kind
or nature which has escheated to this state, he shall
direct the district attorney in the district where such
bank or banking institution is located to file in the
circuit court an information or bill of discovery, with
proper interrogatories to be answered by the owner,
agent, or manager of such bank or banking institution,
and, upon the filing of such information or bill, the
court shall order and direct, at a time to be desig-
nated in said bill, that said owner, agent, or manager
of such bank or banking institution shall, under oath,
file an answer to said information and interrogatories,
and shall specially answer each and every interroga-
tory contained in such information or bill. If it ap-
pears to the court from such answer that said bank,
banker, or banking institution has any property in its
possession which has escheated or may escheat to this
state, it shall direct the said bank, banker, or banking
institution forthwith to bring the same into such court,

and the court shall proceed to dispose of said property as provided elsewhere in this act": Hill's Code, § 3143. Under this statute, whenever the governor is informed or has reason to believe that a bank is in possession of any fund, funds, or other property which has escheated to the state, he is required to direct the proper district attorney to file an information or bill of discovery, with proper interrogatories to be answered by the bank; but, there being no statutory provision as to what the bill shall contain, it seems to us the principles and doctrines governing such proceedings which have long been settled by courts of equity must apply to and determine the sufficiency of the proceedings under the statute.

A bill of discovery has a well known and universally recognized meaning in the law, and, in the absence of anything in the statute to the contrary, it is but fair to presume that the legislature intended to use the term in its generally accepted legal sense. In that sense it is a mere instrument of procedure in aid of relief sought by the party in some other judicial controversy, filed for the sole purpose of proving the plaintiff's case from the defendant's own mouth, or from documents in his possession, and asking no relief in the suit except it may be a temporary stay of the proceedings in another suit to which the discovery relates: Pomeroy's Equity Jurisprudence, § 191. As so construed, the design of the statute is to authorize the governor to direct the district attorney to file an information or bill of discovery whenever he is in possession of facts the averment of which would support such a proceeding, and not otherwise. This is strengthened by the fact that before the governor can direct the proceedings to be commenced he must be informed or have reason to believe that the bank

has in its possession some fund or other property
which has escheated to the state, and this seems to
negative the idea that he may cause a proceeding to
be instituted for the purpose of searching for such in-
formation, or for some facts upon which to base his
belief. The statute does not authorize the information
or bill of discovery to be filed at the pleasure of the
governor, but only when he is informed that the bank
is in possession of escheated property, or when he has
knowledge of such facts and circumstances as give
him reason to so believe. If he is so informed, he
may direct the district attorney to file the proper in-
formation without a bill of discovery; but if, from the
facts and circumstances within his knowledge, he
deems it advisable, he may direct that a bill of dis-
covery, setting out such facts and circumstances, be
filed in aid of an action at law about to be brought,
and thus require the bank to answer interrogatories
concerning the condition, amount, etc., of the particu-
lar fund or property which he has reason to believe
is in its possession, and has escheated to the state.
But, as we read the statute, he has no authority to in-
stitute purely inquisitorial proceedings in an endeavor
to unearth some possible cause of action, and thus re-
quire the bank not only to disclose but to make a pub-
lic record of the confidential and private relations ex-
isting between it and its depositors, without a showing
of any kind that the whole proceeding will not be
fruitless in every way. Before such a proceeding can
be maintained, it should clearly appear that the legis-
lature so intended. We think, therefore, the suffi-
ciency of the bill in this case must be determined by
the ordinary rules defining the nature and scope of
bills of discovery. Such bills had their origin in the
fact that under the inflexible rules of the common law

the parties to an action were incompetent as witnesses, and no means were provided by which an adverse party could be compelled to produce documents in his possession for the use of his opponent on the trial. For this reason resort was early had, in courts of equity, to bills of discovery in aid of an action at law either then pending or about to be commenced, by which either party could obtain the testimony of his adversary, or compel the production of documents in his possession material to his case. And while our statute has made the parties competent witnesses, and furnishes a simple, expeditious, and summary means by which one party may obtain the evidence of another, or compel the production of documents in his possession, the proceeding by bill of discovery perhaps still remains, although the necessity for resort to such a remedy is much lessened. But, if so, the fundamental principles governing such a bill have remained unchanged, and are as binding today as they have ever been. Its object is to enable the plaintiff to obtain from his opponent evidence material to his case, either by requiring him to answer under oath interrogatories the answers to which may be used on the trial of the action at law, or to produce documents in his possession material to plaintiff's case. But it is never suffered to be used to enable him to fish out a case to bring, or a defense to offer, and the interrogatories contained in such a bill must be directed to the inquiry as to whether a specific fact is true, and not as to what are the facts of some supposed case: 62 Law Times, 146. Consequently it has long been established that among the essential and indispensible requisites of such a bill are that it must disclose on its face a cause of action in favor of the plaintiff in aid of

which it is brought, and that the information sought is material thereto.

In the language of Mr. Daniel, it must state "the matter touching which discovery is sought, the interest of the plaintiff and defendant in the subject, and the facts and circumstances upon which the right of the plaintiff to require the discovery from the defendant is founded": 2 Daniel's Chancery Pleading and Practice (6th Am. ed.), *1557. And Mr. Story says that "If the bill does not show such a case as renders the discovery material to support or defend a suit, it is plainly not a case for the interposition of the court. Therefore, where a plaintiff filed a bill for a discovery merely to support an action, which he alleged by his bill he intended to commence in a court of common law, although by this allegation he brought his case within the jurisdiction of a court of equity to compel a discovery, yet, the court being of the opinion that the case stated by the bill was not such as would support an action at law, a demurrer was allowed. For, unless the plaintiff had a title to recover in an action at law, supposing his case to be true, he had no title to the assistance of a court of equity to obtain from the confession of the defendant evidence of the truth of the case": Story's Equity Pleading, § 319. And by Mr. Pomeroy it is said, "The plaintiff in the discovery suit must show by his averments, at least in a *prima facie* manner, that if he is the plaintiff in the action at law he has a good cause of action, and if he is the defendant, he has a good defense thereto": Pomeroy's Equity Jurisprudence, § 198. And in *Mayor of London* v. *Levy*, 8 Vesey, Jr., 398, Lord Chancellor Eldon, in enforcing the rule that the bill must set forth with reasonable certainty the nature of the action which is brought, or, if not brought, the nature of the claim or

right to support which the action is intended to be brought, remarks ''That where the bill avers that an action is brought, or, where the necessary effect in law of the case stated by the bill appears to be that the plaintiff has a right to bring an action, he has a right to a discovery to aid that action so alleged to be brought, or which he appears to have a right and an intention to bring, cannot be disputed. But it has never yet been, nor can it be, laid down that you can file a bill, not venturing to state who are the persons against whom the action is to be brought, not stating such circumstances as may enable the court, which must be taken to know the law, and therefore the liabilities of the defendants, to judge, but stating circumstances; and averring, that you have a right to an action against the defendants or some of them.'' Indeed, to this effect are all the authorities: Story's Equity Jurisprudence, § 1493a; Adams' Equity, 133; 2 Beach's Equity Jurisprudence, § 856; *Bailey* v. *Dean,* 5 Barb. 297; *Newkirk* v. *Willett,* 2 Caine's Cases, 296.

Applying these rules to the case before us, the bill must fail. It does not purport to show that the plaintiff has a cause of action against the defendant, but discloses on its face, both by averment and by the interrogatories, that it is simply searching for one. The averments are that the proposed action cannot be commenced until the plaintiff learns from the defendant ''the name of the depositor, the amount and nature of the deposit, and date of deposit of such funds or other property as are now in the possession of the defendant, which have escheated to the state,'' and that such action is to be ''for the recovery of such sums or other property as may be found in the custody of said defendant bank.'' It is true the information alleges that divers and sundry depositors

have since the date of making their deposits died intestate, without heirs, leaving sundry and divers amounts of money on deposit and in custody of the bank, which has escheated to the state. But this does not state a cause of action in favor of the plaintiff and against the defendant. As shown by the other parts of the information, it is but the merest guess, based on no facts whatever, unless it is that the defendant has been in the banking business for four years, and it is barely possible, although nothing appears to render it probable, that some person or persons may have died intestate, without heirs, leaving money or property in possession of the bank. But mere possibilities are not enough to sustain a proceeding of this kind. It must be based upon some tangible and substantial facts. Indeed, the information states no case whatever. It is clear from the allegations and interrogatories that the animating cause which prompted the suit was simply a hope that something would result from the investigation. No action at law could be maintained, so far as the bill discloses, upon the information sought to be obtained by it, unless upon further investigation it should be ascertained that some of the depositors whose names are sought by this suit have died intestate and without heirs. If defendant was required to answer the interrogatories, and should place the plaintiff in possession of all the information sought by the bill, it would still require further investigation and proof to show that the depositors or some of them died intestate and without heirs; so that the bill not only fails to show a cause of action in favor of plaintiff, but the discovery sought, even if obtained, would not furnish facts upon which to base one. It is true it might furnish data which would lead to the discov-

28 Or.—30.

ery of evidence sufficient to support an action by the state to recover escheated property. But from the earliest times the courts have with one voice declared their hostility to such proceedings. "I am not to compel a discovery to create evidence for some future case," says Lord ELDON in *Finch* v. *Finch*, 2 Vesey, Sr., 490, decided in seventeen hundred and fifty-two, and Judge Story declares that "No discovery will be compelled except of facts material to the case stated by the plaintiff, for otherwise he might file a bill and insist upon a knowledge of facts wholly impertinent to his case, and thus compel disclosures in which he had no interest; to gratify his malice or his curiosity or his spirit of oppression. In such a case his bill would be most aptly denominated a mere fishing bill": 2 Story's Equity Jurisprudence, § 1497. So universal is this rule that it is needless to cite further authorities in its support. The information or bill does not name the person or persons whose property it is claimed has escheated to the state, nor are the interrogatories directed to an inquiry as to any specific fact or fund, or the condition of the account of any particular person or persons, but it is a mere inquisitorial investigation of defendant's business affairs, with the possibility that such investigation may disclose the existence of some fund or property, which, upon further inquiry, the informant may determine has escheated to the state, and for which an action at law or some other proper proceeding may be instituted. Whether some such investigation into the affairs of a bank ought to be made is a question for the legislature, but until it so provides there is no rule of law of which we are aware that will permit it to be done. The decree of the court below is reversed, and the bill dismissed.                                             DISMISSED.