Submitted on briefs June 29, reversed and dismissed July 29, 1922.

## SMITH *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.

(208 Pac. 746.)

**Master and Servant—Designation of Physician and Hospital for Injured Workman Under Compensation Act not Appealable.**

An appeal does not lie under Workmen's Compensation Act (§ 6637, Or. L.), from the action of the Industrial Accident Commission under Sections 6628 and 6644 in designating a physician and hospital for an injured workman, a matter within the commission's discretion and not mentioned in the "Schedule" in Section 6626, made the measure of the right of appeal granted.

From Multnomah: WALTER H. EVANS, Judge.

In Banc.

The plaintiff was an employee of the Smith-Powers Logging Company of Coos Bay, Oregon, which company and himself had elected to come within the jurisdiction of the State Industrial Accident Commission. In the course of plaintiff's employment he received an injury resulting in dislocation of the ligaments of his shoulder. The commission had a contract with the Smith-Powers company to furnish

---

Liability of employer or insurance company for medical and hospital aid furnished to injured employee under Workmen's Compensation Acts, see note in 7 A. L. R. 545.

medical aid and hospital accommodations to any-
one injured while in the company's employ, and the
company in turn supplied a physician and hospital
care to its employees. When the plaintiff was in-
jured he was promptly sent to the hospital. He
properly filed with the commission a claim for com-
pensation under the Workmen's Compensation Act,
which claim was allowed. After fifteen days spent
in the hospital he became dissatisfied with the treat-
ment by the physician in charge and left the hos-
pital. He came to Salem and asked that the com-
mission place him under treatment by some other
surgeon, which request was refused. He then went
to Portland to the Good Samaritan Hospital, and
was there treated by Dr. Slocum. Upon his recov-
ery he demanded that the commission pay Dr. Slo-
cum $150 for his services and pay plaintiff's
hospital fees, amounting to $56.15. A detailed state-
ment of plaintiff's claim was made on June 21, 1921,
in an affidavit filed with the commission, which state-
ment is as follows:

"I, Wincent Smith, being first duly sworn accord-
ing to law, say that I was injured in Coos County,
Oregon, while in the employ of Smith-Powers Log-
ging Company, a corporation engaged in the logging
business and operating under the provisions of the
law generally known as 'the workman's compensa-
tion law' of the state of Oregon. That when so
injured I was turned over to the care of Dr. George
E. Dix, of Marshfield, Oregon, and placed in Mercy
Hospital, North Bend, Oregon, for medical and hos-
pital treatment and attention. That my injuries
that should have responded to proper treatment
continued to grow worse instead of improving under
said treatment until on or about May 22 (I was in-

104 Or.—41

jured May 7, of this year) I determined that it was dangerous to my health to remain longer under the care of said Dr. Dix, when I left said hospital and reported directly to the state industrial accident commission at its office in Salem, Oregon. I was there advised that it would be necessary for me either to return to Dr. Dix for further treatment and attention as might be necessary to effect a cure and correction of my said injuries as then increased and augmented by the treatment I had already received at the hands of the said Dix in said hospital aforesaid. I desired to be cured, that I might be restored as soon as possible, and as nearly as possible, to a condition of self-support * * . My experience under the treatment theretofore given me by Dr. Dix convinced me that I could not hope for recovery or assistance under his treatment, so I was compelled to decline to return to him for treatment and to seek the services of some surgeon in whom I had confidence * * . I then secured the services of Dr. Samuel C. Slocum, Mohawk Building, Portland, Oregon, and entered Good Samaritan Hospital in said city of Portland, where it was found that an operation upon my injured shoulder was necessary to give my said injuries an opportunity to heal and to effect a possible cure and correction of that portion of the injuries that I had received as aforesaid. I was compelled to remain in said latter hospital from said 24th day of May until the 8th or 9th day of June, leaving it just as early as I possibly could consistently with any reasonable chance of an ultimate cure, and was compelled to submit to the said operation at the hands of said Dr. Slocum, who corrected, as far as he could, my then injuries, which grew out of the accident of May 7, aforesaid * *, and I am now using every effort to take the best possible care of myself to the end that I may be restored as soon as possible * * to a condition of self-support * * .

"I have incurred no unnecessary expense in the matter of effecting the desired result aforesaid, and

am doing my best to comply with the spirit and purpose of the said law pursuant to which your honorable commission was created and now functions. The bill incurred for care and surgery at said Good Samaritan Hospital amounts to $56.15; and the bill for services presented by the said Dr. Slocum is $150, making a total of $206.15.

"Wherefore, I respectfully pray for an order of this honorable commission ratifying and approving said bills so incurred and authorizing payment thereof out of the fund provided for that purpose by the law aforesaid; and I hereby pledge my support to any action that you may desire to take to recover said sum, or any part thereof, from said Smith-Powers Logging Company or the said Dr. Dix, or to establish the fact that said corporation is violating the terms of section 6644, Or. L.

"[Signed]   WINCENT SMITH."

On June 21, 1921, by appointment with the commission the plaintiff appeared before that body. It is not shown that any testimony was offered by him or required by the commission at that hearing. It is apparent that the case was passed upon by the commission upon the strength of the reports and statements of the physician who had treated plaintiff in Coos County and the statement made by plaintiff. The interview between the commission and the plaintiff was had before a formal petition had been filed and upon the affidavit of claim then presented. The affidavit is substantially set forth in the statement above quoted.

Previous to the filing of the above affidavit the plaintiff had visited the commission at Salem and represented that the treatment he had received from the physician at the Mercy Hospital in Coos County was unsatisfactory, and he demanded that he be furnished other medical attention. He was told that

no further sum would be furnished for such purpose, unless he returned to the Mercy Hospital. The physician at that hospital in response to inquiries reported that plaintiff had repeatedly removed dressings that had been applied to his shoulder, and that on the night of May 17, 1921, he cut the binders off with a knife and left the hospital the next morning, saying he was going to Portland.

The following memorandum appears on the files of the commission:

"Claim No. 110240—Wincent Smith.

"This claimant called May 23, and we discussed with him his need for medical attention.

"He left the care of Dr. Dix of Marshfield without the doctor's permission, and refused to return to that physician. The information has been developed that before he left the care of the doctor he refused to leave the bandages on his arm as placed by the doctor, and would not follow the doctor's directions.

"He was informed that it would be necessary for him to place himself under the care of some competent physician, and since he declined the services of the hospital contract doctor, it would be necessary for him to bear the expense of employing some other physician. He objected to this and could not understand why the commission should not pay for the services of some other doctor for him. He said he was going to Portland and would take the matter up with some attorney.

"He was instructed to have the doctor he engaged immediately report to the commission the treatment which he was receiving, and was told that unless he was willing to have his arm cared for by some competent physician and follow the physician's instructions the commission would have to suspend his compensation until he had submitted to proper treatment."

On July 5, 1921, the commission sent to plaintiff's attorney, Mr. H. G. Hoy, the following letter:

"The commission has carefully considered all the facts and information presented by the above named workman and yourself as his attorney in support of his application for reimbursement of moneys expended for hospital and medical attention, and finds no justification for payment of these bills. The claimant's application is therefore denied.

"Yours very truly,
"State Industrial Accident Commission.
"[Signed]   W. J. Page,
"Claim Agent."

Later the commission made a formal order closing the case.

The claimant appealed and upon a trial in the Circuit Court, which was had without formal pleadings, the court submitted to the jury the following questions: "1. Did the commission when plaintiff made his application misconstrue the facts of the case before it?  2. Did the commission make the proper award?"  Both of the questions were answered in the negative by the jury. The court rendered a judgment directing the commission to pay to Dr. Slocum, the surgeon who attended plaintiff after he left Mercy Hospital, the sum of $100, and to pay the bill of $56.15 presented by Good Samaritan Hospital; from which judgment the commission appeals.

Reversed and Dismissed.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General.

For respondent there was a brief over the name of *Mr. Harry G. Hoy.*

McBRIDE, J.—We are of the opinion that an appeal does not lie from the action of the commission in designating a physician and hospital for an injured workman, and that it was erroneous to submit to the jury the question raised on the trial. From special proceedings of this character appeal will not lie, unless granted by the express terms of the statute or by necessary implication: *Town of Lafayette* v. *Clark,* 9 Or. 225; *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309); *Fisk* v. *Henarie,* 15 Or. 89 (13 Pac. 760); *State* v. *Security Sav. Co.,* 28 Or. 410 (43 Pac. 160); *Portland* v. *Nottingham,* 58 Or. 1 (112 Pac. 28).

We will now examine the Workmen's Compensation Act to ascertain whether or not the present case is embraced within those decisions of the commission from which it was the intent of the legislature to grant an appeal. Section 6626, Or. L., sets forth what is therein termed a schedule, with clauses lettered from *a* to *k,* inclusive, specifying for what injuries the workman, or his family in case of his death, shall receive compensation, the amount of such compensation, and the length of time for which it shall continue. It is the very substance and heart of the act, and is the only "schedule" in the statute. Then follows Section 6628 in regard to first aid to injured workmen, under which in connection with Section 6644, a part of the act passed in 1917, the plaintiff was placed in Mercy Hospital for treatment. Section 6637 defines the right of appeal. We quote that section in its entirety, italicizing the portions which in our opinion are important here:

"The commission shall have full power and authority to hear and determine all questions within its jurisdiction, but any beneficiary not satisfied with the

decision or findings of said commission, may, within thirty days after notice of the final action of such commission, appeal to the circuit court of the state of Oregon for the county in which such claimant resides. It shall be sufficient to give the circuit court jurisdiction that a notice be filed with the clerk of said court to the effect that an appeal is taken to the circuit court from the decision of the commission, the same to be signed by the party appealing or his attorney, and a copy thereof to be served by registered mail on the commission. Within ten days after the receipt of such notice the commission shall file with the clerk of said court the record of proceedings before the commission, including a transcript of the evidence and all correspondence relating to the said matter, and the case thereafter shall be tried as other cases in said court; provided, that either party thereto may demand a jury trial upon any question of fact, in which case it shall be tried at a regular term in said court and shall have precedence over all other civil cases.

"Upon such appeal the court shall determine whether the commission *has justly considered all the facts concerning the injury,* whether it has exceeded the power of this act, whether it has misconstrued the laws and facts applicable in the case decided, and *whether it has made proper award to the injured workman,* and if it shall determine that the said commission has acted within its powers and has correctly construed the law and facts, the decision of the commission shall be confirmed; otherwise it shall be reversed or modified; providing, however, that in case of any trial of fact by a jury the court shall be bound by the decision of the jury as to the question of fact submitted to it. In case of a modification or reversal the circuit court shall refer the same back to the commission with an order directing it to *fix the compensation* in accordance with the findings made by the court; provided, that *any such award shall be in accordance with the schedule of compensation set forth in this act.* The

costs of such proceedings, including the prevailing fee of $10, shall be taxed against the unsuccessful party. Appeal shall lie on the judgment of the circuit court, as in other civil cases.    ,

"The attorney-general shall be the legal adviser of the commission. Upon request of the commission, the attorney-general or, under his direction, the prosecuting attorney of any county, shall institute or prosecute actions or proceedings for the enforcement of any provisions of this act or for the recovery of any money to the industrial accident fund, of any penalty herein provided for, when such actions or proceedings are within the county in which such prosecuting attorney was elected, and shall defend in like manner all suits, actions and proceedings brought against the commission or the members thereof in their official capacity."

We are of the opinion that it was the intent of the legislature to limit the right of appeal to decisions in respect to the right to secure compensation for injuries, the amount of such compensation, its duration, the beneficiaries to whom it should be paid, and the other kindred matters mentioned in the schedule. The words, "provided that any such award shall be in accordance with the schedule of compensation set forth in this act," if they mean anything, confine the authority of the court to a judgment in respect to the matters mentioned in that schedule; and its power to act thereby becomes the measure of the right of appeal. We are not prepared to say that cases may not arise wherein an arbitrary act or decision of the commission on matters outside the purview of the schedule may be reached by some appropriate proceeding, but we do not believe that such matters can be reached by appeal. Neither do we believe that it was the intent of the legislature to allow an injured workman, when dissatisfied with

the physician furnished him by the commission, to select another physician and drag the commission before a jury, to guess whether he or the commission was the better judge of the qualifications of the surgeon appointed to attend him.

The fund in the hands of the commission is trust money and the commission and the injured workman have the same object in view, namely, to secure the speediest possible recovery of the injured workman; for the sooner he is restored, the sooner he will cease to be a burden on the state. The commission is therefore interested in the selection of a competent physician and its discretion in that respect is not subject to review here. While in this particular instance the plaintiff selected a competent surgeon, there would no doubt occur many instances where ignorant workmen, if allowed to select at will a surgeon to attend them, might fall into the clutches of unskilled quacks whose ministrations would prolong their disability and thereby inflict unnecessary suffering upon them and an increased financial burden upon the compensation fund. For these reasons the law has properly placed the selection of a physician upon the commission, and from the honest exercise of the discretion so given that body there is no appeal.

The judgment of the Circuit Court is reversed and the proceeding dismissed.

REVERSED AND PROCEEDING DISMISSED.