Argued January 26, reargued June 26, reversed July 24, 1923.

# ROHDE v. STATE INDUSTRIAL ACCIDENT COMMISSION.

(217 Pac. 627.)

**Master and Servant—Employee's Own Application for Compensation Sole Process.**

1. The sole process by which an injured employee can move the State Industrial Accident Commission for an allowance from the industrial accident fund is by filing his own application with the commission, as required by Section 6632, Or. L., and no jurisdiction is conferred by the filing of the reports by the physician and employer in accordance with this section and Section 6634.

**Master and Servant—Employee Held Powerless to Ratify Employer's Application for Compensation.**

2. An injured employee failing to apply for compensation cannot adopt his employer's unauthorized application without ratifying a statement therein that he refused to make application himself, and he cannot ratify the employer's act after the time limited by Section 6632, Or. L., for filing application has expired.

**Master and Servant—Application for Compensation cannot be Waived.**

3. The Industrial Accident Commission cannot waive the filing of a valid application under Section 6632, Or. L., by an injured employee for an allowance from the industrial accident fund.

**Master and Servant—Letter from Compensation Claimant's Attorney Referring to Application by Employer Held not to Confer Jurisdiction.**

4. An injured employee failing to file an application for compensation as required by Section 6632, Or. L., held, not entitled to consideration of his claim because of a letter to the commission from his attorney referring to an application made on his behalf by his employer, but not indicating whether he approved of the latter's act.

**Master and Servant—Application for Compensation not Validated by Commission's Acknowledgment of Receipt.**

5. An injured employee failing to file an application for compensation, as required by Section 6632, Or. L., held, not entitled to consideration of his claim because of a postal card from the commission acknowledging receipt of an unauthorized application filed on his behalf by his employer, but making no intimation as to the validity of the claim.

---

1. Notice of injury and filing claim for compensation under workmen's compensation acts, see notes in Ann. Cas. 1917D, 867, 881, 883, 886; Ann. Cas. 1918C, 1042; L. R. A. 1916A, 83, 244; L. R. A. 1917D, 135; L. R. A. 1918F, 524.

**Estoppel—Neither State nor Officers Estopped by Latter's Acts in Governmental Capacity.**

6.   Neither the state nor any of its officers, acting in a governmental capacity, are estopped by any act of any such officer.

**Master and Servant—Commission Held not Estopped from Challenging Sufficiency of Application for Compensation.**

7.   The Industrial Accident Commission, being public officers, charged with the administration of a trust fund under the Workmen's Compensation Act, which was enacted under the state's police power in the exercise of a governmental, not proprietary, function, is not estopped to challenge the sufficiency of an application for compensation filed in claimant's behalf by his employer by taking such application into its custody and marking it "Filed."

**Master and Servant—Commission's Decision That No Compensation Claim was Presented Appealable—"Final Action."**

8.   A decision by the Industrial Accident Commission that no claim had been presented, *held*, a "final action" within Section 6637, Or. L., requiring an appeal to be taken within sixty days after notice thereof.

**Master and Servant—Commission's Letter Notifying Compensation Claimant of Attorney General's Ruling not Appealable Decision.**

9.   A letter from the Industrial Accident Commission to claimant's attorney, after expiration of the time for appealing from its decision that no claim was presented, inclosing a copy of the Attorney General's opinion as to the claim, and notifying the recipient of such officer's holding that no valid claim was filed, and that the commission had no jurisdiction, *held*, not an appealable decision.

**Master and Servant—Letter from Claimant's Attorney Held not an Application for Compensation.**

10.   A letter to the Industrial Accident Commission from claimant's attorney, after expiration of the time for filing an application for compensation, referring to an application on claimant's behalf by his employer within such time, and inquiring as to the possibility of a final settlement, *held*, not an application for compensation, and insufficient if such.

**Master and Servant—Compensation Claim Essential.**

11.   Whosoever claims under the Workmen's Compensation Act must bring himself within its terms as to filing the application required by Section 6632, Or. L.

From Multnomah: WALTER H. EVANS, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, and *Mr.*

*James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

For respondent there was a brief over the names of *Messrs. Senn & Recken* and *Mr. D. A. Norton,* with an oral argument by *Mr. F. S. Senn.*

BURNETT, J.—On April 10, 1919, the claimant, Herman F. Rohde, was in the employ of the Grant Smith-Porter Ship Company. Both he and his employer had elected to be subject to the provisions of the workman's compensation law. On that date he was injured. On April 16, 1919, the employer filed with the State Industrial Accident Commission a report of the accident on the blank prescribed by the commission and in accordance with Section 6634, Or. Laws. That report gave full particulars of the accident, how it happened, the effect upon the present claimant, and all details necessary to a clear understanding of the case.

Conceiving that he had a remedy in admiralty because the accident occurred while he was working on a hull which had been launched into navigable waters, Rohde commenced in the United States District Court for Oregon a suit against the employer for $50,000 damages. On May 3d of that year, H. Beckwith, then one of the commissioners, called upon Rohde, according to the report which the former made to the commission, and informed him of his right to make an application to the commission for an allowance, and according to the report of the commissioner the latter "endeavored to impress him that it was not the purpose of my visit to insist upon a claim being made out, but merely to inform him as to his rights." The claimant does not dispute this statement of the commissioner.

On July 11, 1919, the Grant Smith-Porter Ship Company, the employer using the ordinary blank for workmen's claims for compensation, partly filled it out, giving the name of the employer, the location of its plant, the date of the accident, and the name of the injured workman, and added thereto the following writing:

"The within application is made on behalf of the injured workman, Herman F. Rohde, by his employer, Grant Smith-Porter Ship Company, because said injured workman refuses to make said application himself upon the assumption that the making of the application may affect his supposed right to prosecute a claim for damages in the admiralty court of the United States against his employer for the full damages sustained as a result of the injury. Grant Smith-Porter Ship Company is advised that such a claim for full damages in the admiralty courts of the United States cannot succeed, and if application for the compensation allowed by the laws of Oregon is not made by or on behalf of said injured workman on or before July 10, 1919, he will not be able to secure such compensation, and will be without any remedy or compensation. Therefore, his employer, Grant Smith-Porter Ship Company, makes this application in the name of the injured workman and for him and on his behalf."

It was subscribed thus: "Herman F. Rohde, by Grant Smith-Porter Ship Company, his employer, by Eric V. Hauser, vice-president."

On receipt of this document the commission sent to Rohde a printed postal card reading as follows:

"State Industrial Accident Commission of Oregon.
"Your claim for compensation has been received. Upon receipt of necessary reports you will be advised as to the action taken by the commission. In writing about this claim always give the number, 65,455. Re-

port promptly when you are able to return to work.
"Yours very truly,
"STATE INDUSTRIAL ACCIDENT COMMISSION,
"Salem, Oregon."

Responding to this on July 15, 1919, Lee Roy E. Keeley, attorney for Rohde in the admiralty suit, addressed to the accident commission a letter reading thus:

"On behalf of my client, Mr. Herman F. Rohde, and referring to your card addressed to Mr. Rohde, beg to advise you that Mr. Rohde has filed no claim with you for compensation, has made no application for compensation, and intends to make none. This relates to your file No. 65,455."

The only action taken by the commission respecting the document received was the following memorandum in its files: "Suspension—Approved by the Commission July 23, '19—No claim presented." On March 18, 1922, nearly three years afterwards, the commission received from D. A. Norton, an attorney at law, a letter as follows:

"Mr. Herman Rohde, until his decease [meaning the death of Keeley], a client of Lee Roy E. Keeley, who has had considerable of negotiations with the commission and brought action in the district court of the United States against the Grant Smith-Porter Ship Company and recently lost the decision in the Supreme Court of the United States, has asked me as his present attorney, to ascertain the status of his claim before the State Industrial Accident Commission of Oregon.

"It appears from the evidence of Charles Hart, attorney, of the record of proceedings in the above court that application was made on behalf of Mr. Rohde by Mr. Hart for allowance of his claim by your body with the express purpose of saving Mr. Rohde's rights in case of adverse decision by the fed-

eral courts.   This is confirmed by an acknowledgment of this application by the commission.   The Supreme Court decision itself affirms this right in Mr. Rohde. Mr. Bowdler, of your staff, here in Portland, implies that action can now be expected.   May I inquire what can be done at this time in this matter to effect a final settlement?"

In response to this letter, the commission sent to Mr. Norton the following letter:

"We enclose herewith copy of the opinion of the attorney general relative to the Rohde claim.   You will see that the attorney general holds that no valid claim was filed and that this commission does not have jurisdiction in the case."

Then followed an appeal by the claimant to the Circuit Court of Multnomah County.   At the trial Rohde was called as a witness in his own behalf, and denied that he ever authorized Keeley to write a letter to the commission instructing or notifying it that he did not want compensation or was not asking for compensation.   The postal card already mentioned was put in evidence.   On cross-examination Rohde was interrogated as follows:

"Q. Well, did you ever file any claim for compensation in this case?

"A. Not myself, only I understood that the company had.

"Q. Did you ever authorize anybody to file one for you?

"A. No, I did not.

"Q. I will ask you this question, didn't Mr. Hart tell you that he was going to file a claim for you?

"A. Well, he didn't tell me there.   I think it was up in the federal court, which I was unable to be there, that he told my sister or some one, and she came to me and told me that he had filed a claim which would stand good in case I had lost in the federal courts. * * That is all I ever heard of the claim.

"Q. Did you authorize him to file that claim?

"A. Who?

"Q. Did you authorize him to file it?

"A. Mr. Hart?

"Q. Yes.

"A. No, I did not."

Section 6632, Or. L., of the Workman's Compensation Act, reads thus in part:

"Where a workman is entitled to compensation under this act, he shall file with the commission his application for such compensation on blanks furnished by the commission. The physician who attended him shall send to the commission a certificate made out on blanks furnished by the commission. * *

"No application shall be valid or claim thereunder enforceable in non-fatal cases unless such claim is filed within three months after the date upon which the injury occurred, nor in fatal cases unless such claim is filed within one year after the date upon which the fatal injury occurred. * * "

Section 6634 requires the employer to report an accident to the commission immediately on the occurrence thereof, stating certain particulars.

1. The commissioners are public officers, engaged in the administration of the industrial accident fund. Their duties are prescribed by law. They are not in any sense adverse parties against the claimant. Their functions are limited and defined by the terms of the statute and, being thus ordered, the extent of their authority is well known to everyone subject to the law. They cannot depart from the line of their duty. They can act only on the basis prescribed by the statute. The sole process by which an injured employee can move the commission to make an allowance in his favor from the public funds, is by his own application filed with the commission. The express mandate of the statute is, "he shall file with the com-

mission his application for such compensation on blanks furnished by the commission." It has been argued that the fact that the employer and the physician both made a report confers jurisdiction upon the commission. This is plainly erroneous. Under a statute similar to our own the Supreme Court of Washington thus states the principle:

"In one section the employer, being required to make reports of accidents is directed to state whether the accident 'arose out of or in course of the injured person's employment.' By no language whatever is this section made the basis of compensation or so connected with the compensatory provisions of the law as to give it other than statistical value for information to the department. Moreover in the preceding clause it is stated that the report must be made whenever any accident or injury whatever occurs. This section in short makes no attempt to indicate what shall be paid." *Stertz* v. *Industrial Ins. Com.*, 91 Wash. 588 (158 Pac. 256, Ann. Cas. 1918B, 354).

If the injured workman files his application in the manner prescribed by the statute, his right to compensation is neither aided nor prevented by the filing or nonfiling of reports by the physician and employer. The application of the injured employee is the exclusive formula by which the commission gains jurisdiction in any particular case: *Lough* v. *State Ind. Acc. Com.*, 104 Or. 313 (207 Pac. 354); *Degidio* v. *State Ind. Acc. Com.*, 105 Or. 642 (207 Pac. 176). By the admission of the claimant under oath as a witness, it appears that he never authorized the filing of the document which may be called "the application." The paper itself contained on its face the statement that "the injured workman refuses to make said application himself." The instrument itself notifies the commission that it was filed without authority. It

carries upon its face its own condemnation, discrediting it as an act of or by the authority of the claimant.

2. If there were any evidence of ratification, the person who ratified it, the claimant in this instance, if at all, must be held to have ratified it in its entirety. It is axiomatic that he cannot adopt what is favorable to him and reject the unfavorable part. That is to say, if he ratifies, he says, "I refused to make any application." In effect he declares, "I approve the statement that I refused to make application." In view of the express terms of the document, the letter of Keeley, already quoted, does not affect the case.

Confessedly, moreover, no action by or on behalf of Rohde appears afterwards until the sending of Norton's letter in March, 1922. It was then too late, under any view of the case, to file an original application. The rule in relation to that situation is thus laid down in 31 Cyc. 1250:

"As a general rule, any person may ratify an unauthorized act of another on his behalf, if he could have given previous authority to do the act, and if he still has power to do it at the time of the ratification; otherwise not. A principal, therefore, is incapable of ratifying an act, if his own status has so changed that he is no longer capable of doing the act."

In *McCracken* v. *San Francisco*, 16 Cal. 591, 624, Mr. Chief Justice Field of that court, and afterwards a member of the Supreme Court of the United States, with his usual acumen stated the rule thus:

"It follows, also, from the general doctrine, that a ratification is equivalent to a previous authority, that a ratification can only be made when the principal possesses at the time the power to do the act ratified. He must be able, at the time, to make the contract to which by his ratification he gives validity.

The ratification is the first proceeding by which he becomes a party to the transaction, and he cannot acquire or confer the rights resulting from that transaction, unless in a position to enter directly upon a similar transaction himself.''

In *Norton* v. *Shelby County,* 118 U: S. 423 (30 L. Ed. 178, 6 Sup. Ct. Rep. 1121, see, also, Rose's U. S. Notes), it is said:

''To ratify is to give validity to the act of another, and implies that the person or body ratifying has at the time power to do the act ratified. * * 'A ratification is, in its effect upon the act of an agent, equivalent to the possession by him of a previous authority. It operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally. It follows that a ratification can only be made when the party ratifying possesses the power to perform the act ratified.' ''

See also *Marsh* v. *Fulton County,* 10 Wall. 676, 684 (19 L. Ed. 1040, see, also, Rose's U. S. Notes); *Shepardson* v. *Gillette,* 133 Ind. 125 (31 N. E. 788); *Upton* v. *Dennis,* 133 Mich. 238 (94 N. W. 728). So it is, that not having the right himself to file an application when the Norton letter was written, the claimant was then powerless to ratify the unauthorized act of the company in its attempt to act for him.

3. Some precedents are cited on behalf of the claimant, from Michigan, New Hampshire, Maine and Illinois, on the subject of waiver, with the deduction that because the commission acknowledged receipt of the paper by means of the postal card, it waived the filing of a proper application. In all of those states the employer is required to pay compensation directly to the injured employee or to secure the same by insurance at the employer's expense. Under those statutes it is a question directly between the employee

and his employer. The latter, being *in propria persona,* can of course waive any formality required by the statute, as it is a personal right. For instance, in Illinois the proceedings for the allowance of compensation are directly between the employer and the employee. They are adverse parties. It is said in the statute of that state, it is true, that no proceedings are maintainable unless notice of the accident has been given to the employer as soon as practicable, or unless claim for compensation is made within six months; but the statute further provides that no want of notice shall be a bar unless the employer shall prove that he is prejudiced by such lack of notice. Failure to give notice does not relieve the employer where the facts and circumstances of the accident are known to him or his agent: Hurd's Rev. Stats. of Ill. 1912, p. 1142.

In Texas, according to Vernon's Ann. Civ. Supplement of 1918, Art. 5246, notice is required to be given to the insurance association formed by employers or to a subscriber thereto, within thirty days, unless one or the other of them already has notice of the injury. The claim for compensation must be made in six months, "provided, that for good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice and filing of the claim before the board."

In the Michigan Public Acts of 1912, Act No. 10, provision is made for payment by the employer to the injured employee directly or through insurance organizations. Notice of the injury must be given to the employer, but a notice is not invalid unless an intention to mislead the employer, the insurance company or the commissioner of insurance, is shown and that they were in fact misled. Further, it is said

that want of notice is not a bar, if it be shown that the employer in fact otherwise had notice or knowledge of the injury.

In New Hampshire, Chapter 163 of the Laws of 1911, page 183, lays down the rules of that state. It is indeed there said that no proceedings can be maintained in that state unless notice of the accident has been given to the employer as soon as possible, ''but no want or defect or inaccuracy of a notice shall be a bar to maintenance of proceedings, unless the employer proves that he is prejudiced by such want, defect, or inaccuracy.''

In Maine no proceedings can be maintained unless notice of the accident is given to the employer within thirty days. The notice, however, is not invalid or insufficient unless it is shown that the employer was in fact misled thereby, and want of notice is not a bar, if in fact the employer had knowledge of the injury: Rev. Stats. 1916, Chap. 50.

Those precedents have no application to a statute like ours. While private parties such as those described in those enactments may waive their own rights, public officers cannot waive the rights of the people. In this instance the commissioners could not waive the filing of a valid application by the injured employee as a basis for disbursing public funds.

4, 5. Still further, the letter of Norton, the only communication emanating from Rohde, does not indicate whether he approved or disapproved of the act of the employer in filing the paper quoted. No right or privilege for the claimant can be predicated upon the postal card acknowledging receipt of the paper sent by the employer. It makes no intimation whatsoever as to the validity of the claim. In that respect, the card has no more effect than a statement

that it had been filed. One would as well impute validity to a defective complaint in an action at law merely because the clerk of the court had marked it "filed."

6, 7. At the argument, it was contended by the claimant's counsel that inasmuch as the so-called application formulated by the employer was taken into the custody of the commission and marked "filed," there resulted an estoppel preventing the commission from urging the insufficiency of the document as an application. As said by Mr. Justice McBride in *Smith* v. *State Ind. Acc. Com.,* 104 Or. 640 (208 Pac. 746): "The fund in the hands of the commission is trust money." The commissioners are public officers charged with the administration of that trust fund under what is known as the Workmen's Compensation Act. This law was enacted under the police power of the state which is a governmental and not a proprietary function: *Los Angeles Gas Co.* v. *Los Angeles,* 241 Fed. 912. Neither the state nor any of the commissioners claims any proprietary or any individual interest in the fund. Commissioners function as any other public officers operating under state authority. The well-settled rule is that in all governmental affairs as distinguished from mere proprietary matters, neither the state nor any of its officers acting in a governmental capacity is estopped by any act of any such officer. According to *People* v. *Brown,* 67 Ill. 435, quoted with approval in *Philadelphia Mortgage & Trust Co.* v. *Omaha,* 63 Neb. 280 (88 N. W. 523, 93 Am. St. Rep. 442):

"Public policy, to prevent loss to the state through the negligence of public officers, forbids the application of the doctrine of estoppel to the state, growing out of the conduct and representations of its officers. On the same ground that the government is excused

from the consequence of laches, it should not be affected by the negligence or even willfulness of any one of its officers.'' See also *Tyler* v. *Bailey,* 71 Ill. 34; *People* v. *Seward Highway Commrs.,* 27 Barb. (N. Y.) 94; *Searcy* v. *Yarnell,* 47 Ark. 269 (1 S. W. 319); *Chicago* v. *Sexton,* 115 Ill. 230 (2 N. E. 263); *Rissing* v. *Ft. Wayne,* 137 Ind. 427 (37 N. E. 328); *State* v. *St. Louis Light Co.,* 246 Mo. 618 (152 S. W. 67); *Douglas County* v. *Lawrence,* 102 Kan. 656 (171 Pac. 610); *Chicago etc. Ry. Co.* v. *Douglas County,* 134 Wis. 197 (114 N. W. 511, 14 L. R. A. (N. S.) 1074); *Alexander* v. *State,* 56 Ga. 479; *Booth* v. *State* 131 Ga. 750 (63 S. E. 502).

The commission, therefore, is not estopped to challenge the sufficiency of the application filed by the employer.

All the facts upon which the applicant's claim for compensation might have been based, as stated in that document, were likewise stated but more fully in the original report of the employer, noted above, but as we have seen, the statement of the employer is not a basis for compensation, nor can it affect the rights of the applicant one way or the other. The additional statement given as a reason why the application is made by the employer shows that it was not his act nor was it authorized by him. In brief, he has never made nor authorized any application whatever for compensation under the statute.

8. The only direct action taken by the commission upon the claim is embodied in the memorandum already quoted:

"Suspension—Approved by the commission July 23, '19—no claim presented."

This determination of the commission that no claim had been presented is clearly supported by the document itself and the testimony of the claimant that he did not authorize its filing. This decision was ob-

viously correct and comes within the scope of Section 6637, Or. Laws, requiring an appeal to be taken within sixty days after notice of the final action of the commission. But whether right or wrong, it was a decision and if the claimant would overturn it, he must pursue the remedy prescribed by the statute by appealing within sixty days thereafter. The commission has done nothing savoring of decision since then.

9. In *Enneberg* v. *State Ind. Acc. Com.*, 88 Or. 436 (167 Pac. 310, 171 Pac. 765), Mr. Justice Harris, delivering judgment, wrote to the effect that the letters of the commission narrating what had already been done by that body did not constitute an appealable decision but only amounted to a rehearsal of past occurrences. The same doctrine is laid down in *Iwaniki* v. *State Ind. Acc. Com.*, 104 Or. 650 (205 Pac. 990); *Degidio* v. *State Ind. Acc. Com.*, 105 Or. 642 (207 Pac. 176). In the instant case, all that has happened, according to the record, since the decision of July 23, 1919, is that the commission transmitted to the claimant a copy of the opinion of the attorney general and notified him of that officer's conclusion. This does not rise even to the dignity of a narration of past occurrences within the meaning of the Degidio and Iwaniki cases and cannot amount to an appealable decision according to the doctrine of the Enneberg case. In *Lough* v. *State Ind. Acc. Com.*, 104 Or. 313 (207 Pac. 354), where the hearing was in banc, Mr. Justice McCourt not sitting, the unanimous decision of this court was that an injured workman who, by reason of his insanity was unable to file his claim for compensation within the statutory period, could not be permitted to participate in the fund. In the instant case, we have a claimant confessedly in possession of all his mental faculties, fully informed of

his right to present his claim for compensation, who, under the advice of counsel, pursued what he supposed was a remedy against his employer for a maritime tort promising a much larger financial yield and did not file or authorize to be filed any claim for participation in the industrial accident fund. If Lough, demented as he was, could not participate in the fund because he had not filed an application, much more should compensation be denied to the present claimant who avowedly refused to file an application and even now testifies that he did not authorize the filing of the document upon which his counsel seek to prevail in his behalf.

10. The inquiry of his present attorney, by the letter quoted under date of March 18, 1922, is clearly not an application for compensation within the meaning of the Degidio case and if it were, it is manifestly insufficient because it was not filed within the statutory period after the happening of the accident. The plain deduction is that there was no claim filed with the commission by Rohde and that no right of appeal on his behalf existed when he attempted to appeal.

11. The case, like many other accidents, presents pitiable features, but whosoever claims under the statute must bring himself within its terms. This the claimant has not done in this instance, and as a matter of law he is not entitled to relief in these proceedings. The decision of the Circuit Court ought to be reversed.                                REVERSED.