Argued January 9; affirmed January 23; reargued on rehearing
April 4; former opinion reversed May 21, 1940

# WOOLDRIDGE *v.* ARENS ET AL., STATE INDUSTRIAL ACCIDENT COMMISSION

(98 P. (2d) 1, 102 P. (2d) 717)

Department 1.

*H. Lawrence Lister,* Assistant Attorney General (I. H. Van Winkle, Attorney General, and Oliver Crowther and C. S. Emmons, Assistant Attorneys General, on the brief), for appellants.

*Mark V. Weatherford,* of Albany (G. B. McCluskey, of Toledo, on the brief), for respondent.

KELLY, J. According to plaintiff's application for compensation, petition for rehearing and complaint, on the 25th day of June, 1937, plaintiff, being then employed by R. A. Christianson, was engaged in logging, hauling timber, bucking timber and similar work in logging operations in Lincoln county, Oregon. Plaintiff's showing is to the effect that at that time both his employer Mr. Christianson and he, plaintiff, had complied with all of the laws pertaining to, and were operating under the provisions of the Workmen's Compensation Act. Plaintiff claims that, while thus engaged on said 25th day of June, 1937, a limb from a tree, which plaintiff was in the act of felling, broke loose, fell and accidently struck plaintiff on the left side of his back.

It appears from the record that on March 31, 1938, plaintiff's application for compensation was received by defendant commission, which application was given Claim No. 627,788; the number of Mr. Christianson's

account with the commission was endorsed thereupon; plaintiff was thereupon directed to submit to a physical examination by an examining physician of said commission; and defendant submitted to a physical examination in obedience to said direction.

On April 5, 1938, defendant commission entered an order, which, omitting the title, claim number, date and official signature, is as follows:

"The foregoing claim coming on for consideration before the State Industrial Accident Commission of Oregon, the commission finds:

It is hereby ordered that E. B. Wooldridge be and is hereby denied the benefits of the Workmen's Compensation Act, for the reason that the commission is refusing to accept claim for injury of June 25, 1937, on account of same not having been received within three months from the date of the accident."

On May 28, 1938, plaintiff filed with defendant commission an application and petition for rehearing of his claim and application for compensation.

Thereafter, a rehearing was granted by said commission; and on June 16, 1938, a rehearing was held at which time plaintiff appeared and offered evidence.

In June 29, 1938, an order was entered affirming said order of April 5, 1938.

The sufficiency of plaintiff's petition for rehearing and complaint is challenged by defendant commission.

The purported insufficiency of plaintiff's application for rehearing consists in its failure to assign any other alleged irregularity or error than the denial to plaintiff by the commission of the benefits of the Workmen's Compensation Act for the reason that plaintiff's application for compensation was not received within three months from the date of the accident.

A similar objection is made to plaintiff's complaint.

The statute provides that upon an appeal from a final order upon an application for rehearing, plaintiff may raise only such issues of law or facts as were properly included in his application for rehearing. Section 49-1843, Oregon Code 1930, as amended by chapter 178, Oregon Laws 1935, p. 263.

It is urged that the complaint should have stated plaintiff's marital status, dependents, wages, whether he worked six or seven days a week, in order to afford a basis for findings thereon by the trial court on appeal.

The section of the statute, above cited, also provides:

"If the court shall determine that the commission has acted within its power and has correctly construed the law and facts, the decision of the commission shall be confirmed; otherwise, it shall be reversed or modified; provided, however, that in case of any trial of fact by a jury, the court shall be bound by the decision of the jury as to the question of fact submitted to it. In case of a modification or reversal, the circuit court shall refer the same back to the commission with an order directing it to fix the compensation in accordance with the findings made by the court; provided, that any such award shall be in accordance with the schedule of compensation set forth in this act." Section 49-1843, Oregon Code 1930, as amended by Chap. 178, Oregon Laws 1935, at p. 263.

■ The question thus presented is whether in those cases, where the commission holds that the application for compensation has not been filed within the period prescribed by law, and therefore the commission rejects and dismisses the claim for compensation, it thereby becomes necessary, in order to support an appeal from such action of the commission, for the claimant to include in his petition for rehearing and com-

plaint all of the facts and details of his injury necessary to be considered in disposing of the case on its merits.

It would follow, if such construction of the statute be approved, that it would thereby be incumbent upon the trial court to hear proof thereof and make findings thereupon. It would also follow that the commission would be required to fix the compensation in accordance with such findings provided that such award was in accordance with the statutory schedule of compensation.

We think that these provisions of the statute should not be so construed. The result of such construction would place upon the trial courts much unnecessary work of a character best suited in the first instance to the facilities, conveniences and agencies of the commission. On the other hand, if the course, which was taken herein, be followed, many times, after an investigation by the commission, no issue will be made upon the character of injury, its resulting degree of disability or the amount of compensation that should be awarded.

The section of the statute, above cited, provides that an appeal in cases of this character shall be perfected by filing with the clerk of the court a complaint, as provided in civil actions at law and that after issue joined thereon by the commission, the case shall proceed as other civil cases, provided that either party thereto may demand a jury trial upon any question of fact. Chapter 178, Oregon Laws 1935, p. 263.

There is an analogy between the instant case and an action at law where a demurrer to the complaint has been sustained and the action dismissed on the ground that the action was not instituted within the time prescribed by the statute of limitations. Assuming that the action at law was one in which, unless an avoidance of the statute could be shown, the complaint would

be vulnerable to a demurrer, but the complaint contained the statement that after the accrual of the cause of action, defendant departed from and resided out of the state or concealed himself for such a length of time that the filing of the complaint was within the legal period of limitation, and that notwithstanding such a statement in the complaint, the court sustained a demurrer and dismissed the case on the ground that the cause was not instituted within the prescribed statutory period, the procedure on appeal in such a civil case would be to determine whether it appeared on the face of the complaint that the action was or was not commenced within the time required by the various provisions of the code. In such an action the determination on appeal would be that the demurrer was improperly sustained and that the action should not have been dismissed on that ground; but the appellate court would not concern itself with the question of the validity or invalidity of the chose in action which constituted the basis of plaintiff's complaint. In the first instance that question should be determined by the tribunal created for hearing such causes.

There are many civil cases differing in their procedure one from another. An action of claim and delivery differs widely in its procedure from one of forcible entry and detainer or from any civil case wherein a general verdict will suffice. This is said only to indicate that the character of the proceeding and the question to be decided therein must be considered in determining the procedure to be taken.

■ We hold that plaintiff's petition for rehearing and complaint were sufficient to give the circuit court jurisdiction and to uphold the material and relevant findings of the trial court and jury. Moreover, because

of the inferences which may be drawn from the testimony herein, we are of the opinion that the testimony adequately supports such findings.

Plaintiff's complaint plainly alleges that his claim for compensation was filed by the commission.

We quote paragraph VI of plaintiff's complaint:

"That in truth and in fact the said claim was filed by said State Industrial Accident Commission and was considered by said State Industrial Accident Commission and the said Commission thereby acquired and assumed and exercised complete jurisdic(tion) over said claim and did examine the plaintiff and applicant therein for compensation, and did, upon the rehearing, receive evidence of all the facts pertaining to said injury and the failure to report the same and the reasons therefor and did adjudicate all of the said facts upon the merits of the cause." (Syllable and parentheses supplied.)

The initial paragraph in plaintiff's petition for rehearing is as follows:

"Comes now the undersigned E. B. Wooldridge and respectfully petitions the State Industrial Accident Commission for a re-hearing of his claim *heretofore filed* and the order of April 5, 1938, denying the same and respectfully, for grounds of re-hearing alleges:" (Italics supplied.)

Paragraph III of plaintiff's petition for rehearing contains the following statement,

"that this employe did not know until *he filed his claim herein, within one year,* that the said lobular abscess was caused by said injury * * * and the loss of time and operation was caused by the said accidental injury." (Italics supplied.)

It is therefore apparent that plaintiff's petition for rehearing, as well as his complaint, contains averments of the filing of his said application for compensation.

■ The jury found that the commission permitted plaintiff to file his claim before the expiration of one year from the date of his injury. The court is bound by that finding; therefore, this is not a case where the sufficiency of a showing is being tested upon which permission is sought to file an application for compensation at a time more than three months and less than one year after the injury occurred. It is a case where an application for compensation was received and filed and thereafter rejected because not filed within the three months period next following the accident notwithstanding that it was filed within a year after the accident occurred.

■■ There is nothing in this record that indicates that the commission, in the exercise of its discretion, was not wholly warranted in receiving plaintiff's claim. We do not hold that the commission could not have prosecuted an inquiry upon the showing made prior to the filing of such a claim. Where such an inquiry is seasonably made, that is, before the filing of the claim, if the commission should hold the showing to be insufficient, an appeal would present the question whether there had been an abuse of discretion on the commission's part in refusing to accept the claim. There is nothing in the record to the effect that no showing was made as a basis for making a deferred filing of plaintiff's claim; and in the absence of anything to the contrary, we are warranted in applying the presumption that legal duty has been regularly performed.

Plaintiff's testimony discloses that at the office of the commission, in the presence of one represented as a member of the commission, plaintiff fully explained the circumstances of his injury and stated the reasons for his delay in tendering his claim for compensation.

In the commission's answer no allegation or claim is made that any deception or fraud was practiced upon the commission to induce the commission to permit plaintiff to make the deferred filing of his claim. On the trial in the circuit court no testimony was given by the commission.

■ It is argued by the commission that the only ground for reversal urged in plaintiff's petition for rehearing and complaint is an alleged abuse of discretion on the part of the commission in refusing to permit plaintiff to file his application for compensation; that plaintiff abandoned that claim at the trial; and that such alleged abandonment had the effect of leaving plaintiff without any basis for his appeal.

We cannot concur in this view. As stated, plaintiff's application for rehearing and his complaint disclose that plaintiff's claim was received and filed. That fact was one ground for reversal urged by plaintiff in his appeal to the circuit court from the order of the commission. It was not abandoned at any time. In the present state of the record, the contention that the commission abused its discretion in refusing to permit plaintiff to file his application may be considered as mere surplusage. No motion to strike it as sham was made; and the commission could not have been misled in any way, because it was the custodian of plaintiff's application at all times after it had been filed.

■ We hold that the action of the commission in permitting claimant to file his application for compensation, giving said paper a claim number, indicating thereupon the number of his employer's account with the commission, directing the plaintiff to undergo a physical examination by one of the commission's examining physicians, and thereafter proceeding to hear plain-

tiff's application for rehearing was a proper exercise of its discretion in the light of the facts as disclosed by this record.

We think, however, that the commission should not thereafter have rejected plaintiff's claim, because it had not been filed within three months after the injury.

■ The commission calls our attention to the case of *Lough v. State Industrial Accident Commission*, 104 Or. 313, 207 P. 354, in support of its statement that an application for compensation in nonfatal cases must be filed within three months after the occurrence of the accident causing the injury. That case was decided on June 6, 1922. In 1925, the statute was amended by virtue of which amendment discretion was expressly given to the commission, upon a proper showing, to permit the filing of an application for compensation in nonfatal cases after the expiration of three months but within one year from the date of the injury. The doctrine of the Lough case must be conformable to this amendment. In other words, that doctrine is that a claim for compensation must be filed within the time prescribed by statute.

The *Rohde case*, 108 Or. 426, 217 P. 627, also cited by the commission, holds that the mere receipt of a claim by the commission does not estop the commission from questioning its sufficiency. In the case at bar, there is no record that the commission questions the sufficiency of plaintiff's application for compensation. The commission's only objection thereto, of which there is a record, is that such application was not filed within three months.

■ The commission also insists that the findings of the jury to the effect that plaintiff's present disability was caused by the accident occurring on June

25, 1937, and resulting in a condition, known as a pus sac or empyema in his left chest, should not be deemed binding upon the commission.

We think that there was no impropriety in alleging such facts in plaintiff's application for rehearing and complaint; however, in the present state of the record, they are merely matters of inducement. These facts, if true, would tend strongly to cause plaintiff to urge the commission to permit him to make a deferred filing of his claim. Plaintiff testified that he talked to the gentleman in the office of the commission, who was called by the lady in charge of the office and said by her to be a member of the commission, for "thirty or forty minutes, maybe an hour"; and that during all that time he was talking about nothing else but the accident and the result of it. The report of these facts would incline any reasonable person to permit a deferred filing of a claim for compensation based thereon. For these reasons, the testimony tending to prove such facts was admissible.

The only question necessary to have been decided on appeal was whether plaintiff's claim had been filed by the commission within one year from the alleged date of the injury sustained by plaintiff while employed by Mr. Christianson. For this reason, we hold that as to the question of the character and extent of plaintiff's injury, and the further question whether his present disability was the result of his injury on June 25, 1937, the verdict of the jury cannot be considered as an adjudication. The purpose of the verdict has been accomplished in deciding the question before the court and its effect should not be further extended.

The questions arising upon the commission's objection to the admission of Dr. Howell's testimony do not

affect the issue whether or not the commission filed plaintiff's application for compensation; and, hence, it is unnecessary to discuss them.

■ The commission argues that a deferred filing, which it is within the discretion of the commission to permit or to refuse, cannot be made upon the direction or authority of but one commissioner. We are not inclined to disagree with that principle; but in the case at bar no member of the commission testified. We have the record of the receipt of plaintiff's application at the office of the commission; the fact that it was given a claim number, the number of the employer's account was placed upon it, it was stamped with the date of its receipt, the plaintiff was directed to undergo a physical examination by one of the examining physicians of the commission, the claim was rejected by an order of the commission, an application for rehearing was granted, a rehearing by the commission was had and testimony was taken thereon. This course, not being contradicted, supports the finding of the jury, that the commission, not merely one member thereof, permitted plaintiff to make the deferred filing of his claim. Obviously, a reasonable inference could be drawn therefrom by the jury that the person, who received the application, placed upon it the endorsements mentioned, and directed plaintiff to undergo an examination, was authorized so to do by the commission.

For these reasons, the judgment order of the circuit court is affirmed and this proceeding is remanded for such further action as may not be inconsistent herewith.

RAND, C. J., and BEAN and ROSSMAN, JJ., concur.

424

Reargued on rehearing April 4; former opinion reversed
May 21, 1940

On Rehearing
(102 P. (2d) 717)

In Banc.

LUSK, J. The defendant State Industrial Accident Commission made an order denying to the plaintiff the benefits of the Workmen's Compensation law and refusing to file his claim for the reason that it had not been received within three months after the date upon which the injury occurred. The plaintiff applied for a rehearing, which was granted, and the commission, after rehearing, entered an order adhering to its former decision, and from that order the plaintiff appealed to the circuit court. Substantially, he alleges in his complaint that he was injured in the course of his employment while both he and his employer were subject to the Workmen's Compensation law; that for certain reasons stated he failed to file his claim within the three months period; that his claim was filed within one year after the injury occurred and was accepted by the commission, which assumed full jurisdiction over it. He charges that the commission is guilty of an abuse of discretion in refusing to grant him compensation for his injury, and prays for a judgment that he is entitled to receive compensation and directing the commission to allow him compensation as provided by law for such injury.

Based upon the jury's verdict, the circuit court entered a judgment setting aside the order of the commission, finding, among other things, that the commission had permitted the claim to be filed, and directing the commission to allow the plaintiff compensation as by law provided for his injury.

The court is now of the opinion, after rehearing, that the plaintiff has produced no evidence in support of the essential allegations of his complaint and that the circuit court should have granted the defendants' motion for a directed verdict. Formerly, the statute provided that a claim based on an injury not resulting in death must be filed with the commission within three months after the date of the injury. Then, no matter how valid the excuse or what the circumstances of hardship, such, for example, as in the case of *Lough v. State Industrial Accident Commission*, 104 Or. 313, 207 P. 354, an injured workman was without recourse if the claim was not filed within the statutory period. To ameliorate the harshness of the law, the legislature in 1925 provided:

"* * * The commission, upon a sufficient showing being made, may, in its discretion, permit the filing of a claim in a nonfatal case after such three months' period, but within one year of the time the injury occurred." § 49-1836 (d), Oregon Code 1930.

The case of the plaintiff, as made by his complaint, is that the commission, in the exercise of the discretion thus conferred upon it, permitted the filing of his claim after the expiration of the three months' period, and thereby assumed jurisdiction over it, for which reason the commission is bound to pass upon the merits of his claim. A summary of the evidence appears in the former opinion. We think that evidence fails to show that the commission took any action whatsoever with respect to the plaintiff's claim until it made its order dated April 5, 1938, by which it refused to accept the claim because it had not been received within three months from the date of the accident. The statute provides:

"A majority of the commissioners shall constitute a quorum to transact business, and the act or decision of any two of the commissioners shall be deemed the act or decision of the commission * * *." § 49-1805, Oregon Code 1930.

There is not a syllable of evidence in the record that any member of the commission, except one, had ever heard of the plaintiff's claim until the order of April 5, 1938. It is doubtful, indeed, whether there is any competent evidence that any commissioner had heard of the claim before that date. The plaintiff testified that he discussed his claim with an unidentified person who, he was informed by an attendant in the office of the commission, was one of the commissioners. That would be hearsay as to the identity of the man to whom the plaintiff talked. But, assuming that a member of the commission discussed the matter with him and directed him to a physician for a physical examination, and received the claim and turned it over to a clerk of the commission and instructed the clerk to place upon it a file number and the number of the employer's account, together with a stamp showing the date of its receipt, none of these facts, taken separately, nor all of them together, would constitute action upon the claim by the commission nor justify the drawing of an inference that the commission had acted. The statute, which authorizes the commission in its discretion to permit the filing of the claim after the three months' period, "upon a sufficient showing being made", manifestly contemplates that the commission shall investigate the case before acting upon the application. Otherwise, it could not exercise any discretion whatever. The mere receipt of the claim at the office of the commission and the performance of such me-

chanical acts as placing numbers and file marks upon it, surely do not constitute the exercise by the commission of such discretion. In the whole record of this case the only evidence of any action taken by the commission with respect to the claim is the order of April 5, 1938, refusing to accept it because it had not been received within the statutory period and its subsequent order of June 29, 1938, reaffirming its previous order after a rehearing.

It is no doubt true that granting the petition for rehearing and the rehearing itself were the acts of the commission. But the rehearing which was granted was on the question of whether or not the claim should be considered at all, not on the merits of the claim. The commission's order, dated June 29, 1938, which, after rehearing, affirmed the previous order of April 5, 1938, recites that the plaintiff "was denied the privilege of filing a claim for compensation * * * on the grounds that said application for compensation was not received within three months from the date of the alleged injury". The rehearing was upon the matter determined by the order of April 5, 1938. The application refers to that order, and alleges that because of the facts in the application stated, which include the plaintiff's excuse for not filing the claim within the statutory time, "there was and is an abuse of discretion, lodged by law with the State Industrial Accident Commission, to not consider and allow the claim of this employee filed herein." The commission did not take jurisdiction of the claim by granting a rehearing on the question of whether or not it had taken jurisdiction of the claim, assuming that that was the question presented by the application for rehearing.

In point of fact, that was not the ground on which the application for rehearing was based, but the basis of the application was the refusal of the commission to permit the claim to be filed. That presents another objection to the validity of the judgment, to which we shall presently advert.

The cases of *Yeager v. State Compensation Commissioner*, 113 W. Va. 257, 167 S. E. 617, and *Calloway v. State Compensation Commissioner*, 113 W. Va. 47, 166 S. E. 700, cited by the plaintiff, are clearly distinguishable. In West Virginia there is one compensation commissioner. In the Calloway case the court found, from the admitted facts, that that official had exercised his discretion to receive the application and pass upon it after investigation. He had sent a blank application for compensation to the claimant's attorney, investigated the merits of the case, and subsequently advised the claimant that his claim was refused on the ground that it was not proven that his disability was due to an injury. After this, the commissioner decided, and so advised the claimant, that his claim had not been filed within the statutory time. In the Yeager case, in addition to other facts showing that the sole commissioner had assumed jurisdiction of the claim, an inspector was sent to take evidence in regard to the alleged injury. This evidence was transmitted to the commissioner, and an application blank was afterwards forwarded to the claimant and received by the commissioner, who thereafter made an order which showed on its face that the commissioner had considered the merits of the claim. The commission had, as the court said, "gone into but one question, the compensability of the claim." In both cases the court

rightly held that the commissioner had exercised his discretion given by statute to permit the claims to be filed; but the distinction between those cases and the one here under review is, first, that in them the action taken was the action of the sole official with authority to act, and, second, that there was affirmative evidence showing that he had accepted the claims and had actually entered upon a consideration of their merits before attempting to reject them on the ground of a late filing.

A further fatal defect in the plaintiff's case appears when the application for rehearing is compared with the complaint in the light of the following provisions of the Workmen's Compensation law. The statute requires a claimant, aggrieved by an order of the commission, before appealing, to file with the commission an application for a rehearing and that:

"Such application shall set forth in full detail the grounds upon which the claimant considers such order, decision or award is unjust or unlawful, and shall include every issue to be considered by the commission, and it must contain a general statement of the facts upon which the claimant relies in support thereof. The claimant shall be deemed to have waived all objections, irregularities and illegalities concerning the matter upon which such rehearing is sought other than those specifically set forth in such application for rehearing." § 49-1842, Oregon Code 1930.

In section 49-1843, which grants the right of appeal to the circuit court, it is provided: "But upon such appeal [the claimant] may raise only such issues of law or facts as were properly included in his application for rehearing."

The averments of the complaint raise issues not included in the application for rehearing, and lay a different basis for the relief demanded. The complaint

alleges that the plaintiff's application for compensation and report of injury "was filed by the State Industrial Accident Commission and the merits of the case were examined by said defendant State Industrial Accident Commission and the plaintiff herein was examined by a physician designated and appointed by the defendant State Industrial Accident Commission". By these allegations the plaintiff has set forth the facts which, he asserts, lead to the conclusion that the commission permitted his claim to be filed and assumed jurisdiction over it. None of these facts is stated in the application for rehearing. The application, indeed, proceeds on an entirely different and inconsistent theory. After detailing the facts of his injury, it proceeds as follows:

"III

"That said accident was not reported at the time the same occurred for the reason that this employe did not believe that the injury was more than superficial and was not of sufficient consequence to require the payment of compensation; that this employe did not know until he filed his claim herein, within one year, that the said lobular abscess was caused by said injury; that the said lobular abscess was caused by said injury and the loss of time and operation was caused by the said accidental injury;

"IV

"That immediately upon learning that the said condition was brought about as a direct result of said injury, this employe consulted the two doctors concerned, Dr. John N. Hohl of Taft, Oregon, and said Dr. M. G. Howard at Eugene, Oregon, and secured information from these medical doctors that the said injury did cause the late development of the said lobular abscess; that not until this discovery was it possible for this employe to report said accident to the said Accident Commission, and he did forthwith report the same upon discovering the connection between said

lobular abscess and said accidental injury; that this employe acted in good faith and believed that it is an abuse of discretion and alleges the fact to be that it is an abuse of discretion for the State Industrial Accident Commission not to entertain his said claim and accept as an excuse for not filing the claim earlier the facts herein set forth; that to deny this claim is to deny the claim of one who suffered an accidental injury and filed the same as soon as he had secured information which connected his serious affliction with the said accidental injury; that in the event a re-hearing is granted, this employe will bring the statements and testimony of the said two doctors to the Commission with a full statement of his condition at all times after the accidental injury and convince the Commission and its medical advisers of the facts herein stated.

"V

"That the order made by this Commission on the 5th day of April, 1938, is in words and figures as follows, to-wit:

"'IT IS HEREBY ORDERED THAT E. B. Wooldridge be and is hereby denied the benefits of the Workmen's Compensation Act, for the reason that the Commission is refusing to accept claim for injury of June 25, 1937, on account of same having not been received within three months from the date of accident.'

that because of the facts herein stated, there was and is an abuse of discretion, lodged by law with the State Industrial Accident Commission, to not consider and allow the claim of this employe filed herein.

"WHEREFORE, Petitioner prays for a re-hearing of his claim herein filed and for a reversal of the order made April 5, 1938, and herein set forth, and that upon said re-hearing the Commission allow this employe hospitalization provided by law."

■ There is nothing in the foregoing language which, under any reasonable interpretation, can be said

to mean that the commission, in the exercise of its discretion, had permitted a deferred filing. The application is based upon an alleged abuse of discretion, and nothing else. The charge that the commission abused its discretion because it refused "to entertain his said claim and *to accept as an excuse for not filing the claim earlier the facts as herein set forth*" is wholly inconsistent with the theory of the complaint that the commission permitted the complaint to be filed. Abuse of discretion and exercise of discretion are widely different things. The purpose of the statute, which forbids a claimant to raise issues in the courts which have not been submitted to the commission in an application for rehearing, is obvious. The letter and spirit of the statute are violated by the course which the plaintiff has pursued, and the consequent judgment is, for that reason alone, one that cannot be defended.

The judgment of the circuit court is reversed and the cause remanded with directions to enter judgment for the defendants.

RAND, C. J., and BELT and BAILEY, JJ., concur.

BEAN, J., not sitting.

———

ROSSMAN, J. The judgment of the circuit court from which this appeal was taken (1) set aside the original order of the Industrial Accident Commission; (2) set aside the order entered by the commission upon the plaintiff's petition for a rehearing; (3) found that the plaintiff sustained an accidental injury arising out of his employment; (4) declared that as a result of that injury the plaintiff "suffered a pus sac or empyema of the left chest cavity"; (5) declared that the plaintiff "is entitled to receive the compensation

allowed by law for the injury thus received''; and (6) directed the commission ''to grant and allow to the said E. B. Wooldridge such compensation as the law provides for the injury.''

Section 49-1843, Oregon Code 1930, is the section of our laws which describes the relief which a court may grant when it modifies or reverses an order of the Industrial Accident Commission. The part of that section which describes what may be done is the following:

''* * * In case of a modification or reversal the circuit court shall refer the same back to the commission with an order directing it to fix the compensation in accordance with the findings made by the court; provided, that any such award shall be in accordance with the schedule of compensation set forth in this act.''

It is evident that the judgment which was entered did not grant any relief which the statute says may be awarded. Section 49-1827, Oregon Code 1930, which obtains the ''schedule of compensation'' available under the act, awards nothing for ''a pus sac or empyema.'' Additional findings were clearly necessary, but the complaint by its absence of averment afforded no foundation for them. The failure to enter an order of the kind contemplated by the statute was due to the fact that the orders entered by the commission could not possibly result upon appeal in the award of the kind of relief authorized by the statute. The original order entered by the commission (April 5, 1938), omitting matters of no consequence to us, said: ''It is hereby ordered that E. B. Wooldridge be and is hereby denied the benefits of the Workmen's Compensation Act, for the reason that the commission is refusing to accept claim for injury of June 25, 1938, on account of the same having not been received within

three months from the date of accident." After the plaintiff had filed his petition with the commission for a rehearing, a rehearing was denied by an order, the material part of which said: "It is hereby ordered that said order of April 5, 1938, be and the same is hereby affirmed."

Since the commission had made no orders whatever concerning the extent or the nature of the plaintiff's injuries, the circuit court could not explore those fields of inquiry. Its relationship to the commission is that of an appellate tribunal, not one of first recourse. Remedies in administrative bodies must be exhausted before recourse can be had to the courts. Therefore, since the circuit court was without authority to determine the nature or the extent of the plaintiff's injuries, it could not at the conclusion of the appeal "refer the same back to the commission with an order directing it to fix the compensation in accordance with the findings made by the court * * * in accordance with the schedule of compensation set forth in this act * * *"
—those being the words of the statute which delineate the relief to be awarded when a court modifies or reverses an order made by the commission. It is elementary that the right to appeal to the courts from a board, such as the commission, is purely statutory and that, in the exercise of its powers upon appeal, the court can go no further than the statute authorizes. It is my belief that the legislature never intended that an appeal could be taken from the kind of order attacked by the plaintiff. Without further discussion, I express the belief that when the plaintiff was dissatisfied with the course that the commission had taken, a writ of mandamus was very likely available to him, but not an appeal.

I concur in the result reached by the majority, but the above are my reasons.

---

KELLY, J. (dissenting). Consideration of the briefs and arguments upon rehearing prompts the writer to elaborate upon the facts stated by plaintiff in the office of defendant commission preliminary to the filing of his claim. In the original opinion, it is stated that these facts, if true, would tend strongly to cause plaintiff to urge the commission to permit him to make a deferred filing of his claim.

It is also stated that the report of these facts would incline any reasonable person to permit such deferred filing.

These facts are that plaintiff was injured by a falling limb from a tree. This limb struck plaintiff on the left side of his back.

Mr. Charles Howry testified that, at the time of plaintiff's injury, he was working two or three hundred feet from plaintiff. We quote from Mr. Howry's testimony:

"Q. Did you see the accident?
A. No I didn't actually see it.

Q. Was it called to your attention immediately?
A. The whistle punk was in sight of him; he punked the whistle and topped the rig and went over.

Q. What did you observe as to Mr. Wooldridge's condition at the time you got there?
A. Oh he was laying on the ground; one of the boys has this water jug. He has the wind knocked out of him and he is gasping for breath at the time.

Q. Did you see the situation there with reference to the logs and limbs?
A. Yes.

Q. And you heard his testimony on that?
A. Yes.

Q. And would you say that was the situation there?
A. Yes.

Q. Did you observe his back at that time?
A. Well they, I think one of the other chokers took his shirt off. He had a red spot by the shoulder blade where a limb struck him.

Q. On his back?
A. Right below his shoulder blade. Oh I don't know about the size of a baseball, something that way in size I would say."

Mr. Howry also testified that before the accident plaintiff was falling and bucking timber and that such work would be considered a man's sized job, and also that after the accident plaintiff acted like a sick man all the time; that he came back and punked whistle for awhile; that he wasn't able to do much work.

Mr. Earl Morgan testified that he was working in a canyon below the scene of plaintiff's accident; that answering the whistle, he left the canyon and went to plaintiff's assistance. It required Morgan six or seven minutes to reach plaintiff and when he did, plaintiff was still down. Plaintiff was "laying there limp, out". This witness also testified that he knew how it happened, that a man working in the woods would realize how it happened.

This witness also testified that there was a welt, a discolored spot, on plaintiff's back; that plaintiff was not able to walk but he had "two men helping take him out."

This witness also testified that in the fall plaintiff came and started punking whistle. We quote from witness Morgan's testimony:

"As a general rule anyone that knows anything about the woods, the whistle punk usually tends coils, changes lines and like that. I didn't figure he ought to be out working and didn't ask him to do that."

Plaintiff testified that on 'the 25th day of June, 1937, he was bucking trees which were felled, and as he sawed the tree he observed a limb upon it about ten feet long and about three or four inches thick where it was broken off.

He was asked what happened as he sawed that log off, to which he answered:

"Well I concluded at first, so it would not split, all that weight on the end of it, when I bucked it off,—I remember I thought it might roll when I bucked it off and hit a stump and roll back towards me. I went back to the end and got some brush and piled it there. I cut it nearly off, and when I bucked it¦clear off it dropped and [on] this flat place when [went] on over, like to the left, and hit a stump and when it fell ·and turned directly toward me. I got myself away from there as fast as I could but I couldn't get quite far enough. * * *"

Plaintiff also testified that the limb struck him on the left side of his back just below the shoulder blade.

He was asked what he experienced and how he felt at the time to which he answered:

"Well, I didn't know very much, as far as that goes. It knocked me completely out for a second, then I heard the whistle punk across—Oh sixty or eighty feet across the draw from me, holler and ask if I was hurt any. Then I couldn't hear him. I couldn't answer him. Then he hollered to the boys and they came over and found me down and helpless. They helped me to get my breath a little bit. I layed there fifteen minutes I expect. They rolled my shirt up to see how bad I was hurt and one of the boys took me to the doctor. I remember they helped me. I walked out with their help."

Dr. Hohl of Taft treated plaintiff, found no fractured bones, and thought there was no permanent injury.

It appears from the testimony that plaintiff returned to his work and directed the operations of a cutting crew ''and stayed there from then on.''

Plaintiff grew weaker and lost his appetite. He quit work on the 12th of August, 1937, and by the first of October, feeling somewhat better, took the job of punking the whistle, which it appears is a light job, at which he worked for 10 or 11 days.

In December, 1937, Dr. Hohl sent plaintiff to a private hospital at Ocean Lake where plaintiff remained for about 10 days. Plaintiff then returned to his home near Monroe. A physician at Monroe examined plaintiff, discovered the pus sac in his back and advised him to go to Eugene and have an X-ray taken and perhaps an operation.

Plaintiff went to a hospital in Eugene and Dr. M. G. Howard performed an operation upon him removing one of his ribs and draining the pus from the sac aforesaid.

These facts, which were rehearsed by plaintiff in the office of the commission when he asked to be permitted to file his claim for compensation, cause the writer to think that the commission was entirely justified in making the deferred filing of plaintiff's claim. It is apparent that the plaintiff was not apprised of the nature of his injury until he received the diagnosis of the physician at Monroe which was confirmed by that of Dr. Howard and the operation which plaintiff underwent at Eugene.

It is also apparent that plaintiff made every effort he could to continue uninterruptedly in the perform-

ance of his work. In other words, there is no suggestion of malingering or dissembling on plaintiff's part.

Dr. A. P. Howells of Albany, testifying as an expert, expressed his opinion that the pus sac was caused by the trauma resulting from the blow on the back.

The writer's long and pleasant acquaintanceship with Dr. Howells, who practiced his profession for many years at Albany, may over-evaluate that doctor's opinion; and for that reason, the writer prefers to call attention to the fact that not one syllable of testimony was introduced by the commission to refute, explain or modify the showing made by plaintiff through his own testimony and that of his witnesses.

This view of the record is made here to make it clear that these are the facts, which, if true, should incline any reasonable person to permit plaintiff to make a deferred filing of his claim.

It is also stated in the original opinion that the writer thinks that, after filing the claim, having first heard a recital of plaintiff's account above outlined, the commission should not thereafter have rejected the claim on the ground that it had not been filed within three months after the injury. We are indebted to plaintiff's counsel for the following citations which announce this principle: *Yeager v. State Compensation Commissioner*, 113 W. Va. 257, 167 S. E. 617; *Calloway v. State Compensation Commissioner*, 113 W. Va. 47, 166 S. E. 700.

While the writer is of the opinion that the question whether a filing of plaintiff's claim actually transpired is one of fact and that it was properly submitted to a jury which found that such claim was filed, it is to be noted that in any view that has been considered by

the courts as to what constituted the filing of a paper, the record in the instant case supports plaintiff's contention that his claim was filed.

"Originally the filing of a paper consisted in having the proper officer put it upon a string (filum) upon which the other papers in the proceeding were placed. It now signifies an act of the clerk; depositing; depositing for the purpose of being filed; delivery of a paper to the proper officer to be kept on file; placing and leaving a paper among the files; placing a paper in the proper official custody by the party charged with this duty, and the making of the proper endorsement by the officer; presenting a paper at the proper office and leaving it there, deposited with the papers in such office; receiving a paper into custody, and giving it a place among other papers; the act of either party bringing the paper and depositing it with the officer for keeping; or the act of the officer in folding, indorsing and putting up the paper. The term imports that the paper shall remain with the clerk as a record. Filing is not complete until the document is delivered and received; anything short of delivery would leave the filing a disputable fact. Although it has been said that the word 'filing' describes the indorsement on a paper of the day when it is left in a public office, the indorsement upon the paper of the time of its reception is not, strictly speaking, a part of the operation of filing; it is a mere memorandum serving as evidence of the fact." 25 C. J. Subject, File, p. 1126, (§ 5) E.

"Under modern statutes a paper, whose filing carries notice, or affects private rights, is filed when it is deposited with the proper officer at his office, and not elsewhere. Ballentine's Law Dictionary, p. 502, citing 23 R. C. L. 186."

As set forth in the original opinion, the petition for rehearing filed by plaintiff asks for a rehearing of his claim "*heretofore filed*" and refers to the filing of his claim within one year.

*Smith v. State Industrial Acci. Com.*, 104 Or. 640, 208 P. 746, was decided before any formal pleadings were required or permitted upon appeal to the circuit court from an order of the commission. The doctrine of that case is that the law has placed upon the commission the duty of selecting a physician to treat injured claimants and that, from the honest exercise of the discretion so given, there is no appeal. That question is not involved in the case at bar.

Since that decision was rendered, the statute has been amended by providing for the filing of a petition for rehearing and a complaint in order to perfect an appeal.

The present statute states what the petition and complaint shall set forth. The writer thinks that when plaintiff's claim for compensation had been denied because, as the order denying it states, said claim had not been filed within three months, it was not only his right to appeal from such order but such a course was the only one open to the claimant.

Such is the doctrine of *Rohde v. State Industrial Accident Com.*, 108 Or. 426, 217 P. 627.

The following is an excerpt from the Rohde case:

"The only direct action taken by the commission upon the claim is embodied in the memorandum already quoted:

'Suspension—Approved by the commission July 23, '19—no claim presented.'

This determination of the commission that no claim had been presented is clearly supported by the document itself and the testimony of the claimant that he did not authorize its filing. This decision was obviously correct and comes within the scope of Section 6637, Or. Laws, requiring an appeal to be taken within sixty days after notice of the final action of the commission.

*But whether right or wrong, it was a decision and if the claimant would overturn it, he must pursue the remedy prescribed by the statute by appealing within sixty days thereafter.''* (Italics supplied.)

The Rohde case was decided a year later than the Smith case. In the case at bar, in effect the commission made an order after having conducted its rehearing of plaintiff's claim for compensation that no claim had been presented within the time prescribed by law. To hold that plaintiff could not appeal in the instant case, or that he could invoke some other proceeding than an appeal in his attack upon the order of the commission, is to overrule the doctrine of the Rohde case above quoted.

To hold that the appellate court must be loaded down with equipment and facilities for determining the schedule of compensation to be applied at a stage of the case where the commission merely says no claim has been filed and the claimant takes a contrary position, is, in the opinion of the writer, unreasonable, unnecessary and unduly burdensome.

Upon rehearing, it has been urged that there was no action by the commission sanctioning the deferred filing of plaintiff's claim; but, at best, such action was taken by but one member of the commission. The writer is of the opinion that the subsequent course, which admittedly was taken by the commission, refutes the contention that the filing of plaintiff's claim was unauthorized. It cannot be said that the action of the commission in granting plaintiff's petition for rehearing was merely that of one commissioner, nor that the rehearing itself, at which testimony was taken, was merely the act of one commissioner. The writer thinks that it would impair and impede the conduct of the commission's business to hold that, in order to assure a valid deferred

filing of a claim for compensation, the commission would have to attend in a body, perhaps convene in formal session, and enter a written order directing such filing. The nature of business conducted by the commission, in the opinion of the writer, requires much of it to be attended to by but one 'commissioner, who, in imparting it to his fellow commissioners and securing their approval, saves much time and advances the public interests.

The record is entirely silent as to the purported lack of authority of one commissioner to attend to such a filing. It is, however, replete with evidence that such filing was ratified by the entire commission.

Although this case has been twice argued in this court, no suggestion has been forthcoming that any other or different course has been or is being taken in filing claims than that which was taken in filing plaintiff's claim.

It is argued that the volume of business is such that to require applications to make deferred filings to be treated as such only, and therefore not as the applications for compensation are treated, will require an increased office force. This argument does not appeal to the writer. The county clerks could argue with just as much vehemence that there should be no distinction between the filing of a return on a marriage license and that of a notice of appeal from the judgment of the circuit court.

A registry of applications for permission to make deferred filings would be no more difficult to maintain than the registry of claims themselves. It is the view of the writer that they are separate, distinct and different documents one from the other.

While in this case the writer has indicated that after filing plaintiff's claim within the year prescribed by statute therefor, the commission should not have rejected it because it was not seasonably filed, it must be understood that it is because of the facts in this particular case that such a declaration is made. Circumstances, such as misrepresentation, mistake or fraud would render such a rule inapplicable; but those elements are not present here.

It is true that on February 23, 1938, plaintiff wrote the following letter, misdated February 20, 1937, to the commission:

"Dear Sirs:

Last June while working for R. A. Christianson Logging Co. Inc., of Newport I was hit in the back by a limb. Geo. Smith who was working with me took me to Taft and Dr. Hohl, who examined me, said there was no ribs broken, just a bad bruise, but would be layed up a week & to have Christianson sign the Compensation blank. This was on Friday but when Monday came my back wasn't so very sore and as I had charge of the falling & bucking I felt I should be on the job so went back to work and as Christianson had only a small crew and had had several accidents, I didn't feel like making his rate any higher as he said it was already 10 or 10½% so I didn't have him sign it, but I soon began to loose strength and weight and was under the Drs. care but he didn't help me any. I had pains in my back and side and on Dec. 3rd I went completely down. The Dr. taped me and I went to a private hospital in Ocean Lake, stayed there ten days and my brother came and took me to the Eugene hospital. I was X-rayed and operated on. They drained out almost a qt. of pus but not connected with pleura or lung but caused by this hurt. Now I am not trying to chisel or slip anything over on the Comm. as I have worked steady in the woods for the last twenty years, the last five for R. A. Chris-

tianson, and have never drawn any compensation. I would like to know if there is any chance to get something out of this. If it is too late there is no harm done as I feel it was my fault for not laying off when I was hurt. Please let me hear from you.

Yours truly,

E. B. Wooldridge.''

The writer finds nothing in that letter, which was the only evidence introduced by the commission before the trial court, that would warrant the commission in rescinding its action in permitting plaintiff's deferred filing of his claim for compensation.

For these reasons, the writer is of the opinion that the court should adhere to its original opinion, and hence the writer dissents from the opinion of the court on rehearing.