Argued September 11, 1947; reargued January 23;
affirmed June 29, 1948

## TICE *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

195 P. (2d) 188

*C. S. Emmons,* Assistant Attorney General, of Albany, argued the cause for Appellant. With him on the brief were George Neuner, Attorney General, T. W. Gillard, Assistant Attorney General, and Roy K. Terry, Assistant Attorney General, of Salem.

*Harry George, Jr.,* of Portland, argued the cause for Respondent. With him on the brief was John F. Conway, of Portland.

LUSK, J.

This appeal presents important questions of procedure arising under the Workmen's Compensation Law. §§ 102-1701, et seq., O. C. L. A. The plaintiff, a workman subject to the Act, claims that he suffered a compensable injury. He did not attempt to file a claim with the State Industrial Accident Commission until nearly a year after the occurrence of the alleged accident. The statute provides:

> "No application shall be valid or claim thereunder enforceable in nonfatal cases unless such claim is filed within three (3) months after the date upon which the accident occurred." § 102-1771 (e), O. C. L. A.

But the same section also provides:

> "The commission, upon a sufficient showing being made, may, in its discretion, permit the filing of a claim in a nonfatal case within one (1) year of the time the accident occurred."

When he presented his claim to the commission the plaintiff made a showing as to the reasons for his delay, which he contends was sufficient to require the commission, in the exercise of its discretion, to permit the filing of the claim. The commission, however, rejected it, and the plaintiff then appealed to the Circuit Court, where there was a jury trial which resulted in a verdict for the plaintiff. From the consequent judgment the commission has prosecuted this appeal.

The principal questions to be determined are these: (1) What is the proper interpretation of the duties of the commission under the above-quoted discretionary provision; (2) may a decision of the commission under that provision be reviewed by appeal to the Circuit Court with the right to jury trial as in the case of other orders of the commission; (3) assuming that the proper procedure is that stated in (2), did the evidence warrant submission of the cause to the jury?

*First.* As originally passed, the Workmen's Compensation Law provided:

> "No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the right accrued." General Laws of Oregon 1913, Ch. 112, § 27 (d).

In 1917 the time in which to file claims for non-fatal injuries was shortened to three months after the date upon which the injury occurred. General Laws of Oregon 1917, Ch. 288, § 13 (d).

In *Lough v. S. I. A. C.*, 104 Or. 313, 207 P. 354, (1922), this court, construing the word "injury" in the foregoing provision, held that the time began to run from the date of the accident and the immediate consequent injury, and that the fact that the claimant

was rendered partially demented by the accident so that he was unable to file his claim within the three-months period did not excuse him. See, also, *Landauer v. S. I. A. C.,* 175 Or. 418, 427, 154 P. (2d) 189. In 1925 the legislature, apparently for the purpose of ameliorating the harshness of the statute as thus construed (see *Wooldridge v. S. I. A. C.,* 164 Or. 410, 425, 98 P. (2d) 1, 102 P. (2d) 717), added the proviso above quoted giving the commission discretionary power to permit the filing of a claim in a nonfatal case within one year after the date of the injury. General Laws of Oregon 1925, Ch. 133, § 5 (d). In 1935 a provision was adopted which applies specifically to a situation such as was presented in the Lough case. It reads:

> "If a workman, as a result of an accidental injury, has been rendered mentally incapable of filing a claim, a claim may be filed by the workman within 60 days after the removal of such mental incapacity or during such incapacity on behalf of the workman by his parent, spouse, guardian, employer or physician. Any such claim must be filed within one year from date of the accidental injury." Oregon Laws, 1935, Ch. 139, § 1 (e).

At the same time and in the same section the legislature substituted the word "accident" for "injury" in the provision as to filing claims in nonfatal cases, thus making the language of the statute conform to the interpretation placed upon the word "injury" in the Lough case. The existing law with reference to these matters is now found in § 102-1771, O. C. L. A. Summarized, it provides that claims in nonfatal cases must be filed within three months after the date of the accident; that, where mental incapacity ensues, a claim may be filed by the workman within sixty days after the removal of such mental incapacity or, during such incapacity, on his behalf by certain designated persons,

but in any event such claim must be filed within one year from the date of the accidental injury, and finally (the provision with which we are immediately concerned) that the commission, upon a sufficient showing being made, may, in its discretion, permit the filing of a claim in a nonfatal case within one year after the date of the accident.

This provision has never been definitively construed. It was involved in *Wooldridge v. S. I. A. C.*, supra. But that case goes no further than to hold that the commission had never assumed jurisdiction of the claim for the purpose of determining whether or not it should permit it to be filed (164 Or. 425). In *Landauer v. S. I. A. C.*, supra, it was held that the bare unsworn petition of the claimant, unsupported by affidavits, or by medical opinion which would show that the injury claimed could have been caused by the accident alleged, was not sufficient to warrant the conclusion that the commission had abused its discretion in refusing permission to file the claim after the lapse of the three-months period.

Of the legislative history above reviewed, it may be said that it evidences an intention on the part of the legislature to liberalize the provisions of the Act to the end that workmen shall not be deprived of compensation merely because of their failure to file claims within the fixed period when adequate reason or excuse appears for such failure. The legislature was manifestly of the opinion that there are cases in which the strict rule which makes the time for filing claims begin to run from the date of the accident should be relaxed. In 1935 it was found expedient to enact the specific provision which we have quoted to cover cases where mental incapacity made filing of the claim by the injured workman impossible. But the general provision

enacted ten years earlier that claims might be filed more than three months after the accident where a sufficient showing was made was not disturbed, and it is therefore apparent that the legislative intent was to grant relief in other classes of cases than those of mental incapacity. As to this, no difference of opinion has been expressed by the parties here.

■ In determining the meaning of the statute, we are to be guided by the well established rule that the Workmen's Compensation Law must be liberally construed in favor of compensation. *Huntley v. S. I. A. C.,* 138 Or. 184, 191, 6 P. (2d) 209; *Lamm v. Silver Falls Timber Co.,* 133 Or. 468, 489, 277 P. 91, 286, P. 527, 291 P. 375. One possible construction of the provision under consideration is that suggested in the brief of counsel for the commission where it is said with reference to the language "in its discretion": "The provision 'upon a sufficient showing being made' limits the commission to exercising its discretion to those cases where such showing is made (;) it does not change 'may' to 'must'." If we understand this correctly it means that the commission, having first determined that the showing is sufficient, then proceeds to exercise its discretion as to whether it will permit the claim to be filed. In that event, of course, it would be guided by nothing except its own motion as to what was just or expedient in the particular case. Its exercise of discretion would be unfettered, because the only standard set up by the statute would have been exhausted once the commission had determined that a "sufficient showing" had been made. The sufficiency of the showing would not be determinative of the applicant's right, but only of the question whether or not the commission would exercise its discretion.

The word "discretion" has been defined in scores

of cases decided by this and other courts. It is defined in the Standard Dictionary as follows: "(3) Law. The act or the liberty of deciding according to the principles of justice and one's ideas of what is right and proper under the circumstances, without wilfulness or favor." As applied to public functionaries other than courts it is said: " 'Discretion', as applied to public functionaries, means the power or right of acting officially, according to what appears just and proper under the circumstances." 1 Bouv. Law Dict., Title "Discretion"; *Board of Commissioners v. Lewis,* 28 Colo. 378, 65 P. 51; *Murray v. Buell,* 74 Wis. 18, 41 N. W. 1010; *Mutual Home & Savings Association v. Merion,* 67 Ohio App. 439, 37 N. E. (2d) 109, 118. The subject will be found discussed in the following Oregon cases, among others: *Casciato v. Oregon Liquor Commission,* 181 Or. 707, 185 P. (2d) 246; *State v. Lewis,* 113 Or. 359, 230 P. 543, 232 P. 1013; *Nicklaus v. Goodspeed,* 56 Or. 184, 108 P. 135.

Like other words, however, the significance to be attributed to the use of the word "discretion" in a statute varies according to the setting in which it is found and the statutory purpose. There are undoubtedly instances where there has been granted unfettered discretion, the exercise of which cannot be reviewed. For example, the Workmen's Compensation Act of this state, as originally passed, contained a provision that upon appeal to the Circuit Court, "the court in its discretion may submit to a jury any question of fact involved in such an appeal." General Laws of Oregon 1913, Ch. 112, § 32. Manifestly, the question whether a jury should be or should not be called in a particular case was committed solely and finally to the judgment of the court. Again, a Maryland statute with reference to decedents' estates provided that, where

there were no relatives of the decedent in the state and no creditor applied to be appointed administrator, "administration may be granted at the discretion of the court." In *Schneider v. Hawkins,* 179 Md. 21, 16 Atl. (2d) 861, the court held that the exercise of the power granted was not subject to review, saying:

"When a court has authority to act 'within its discretion', it is vested with power to decide as it considers proper, and its discretion is not subject to review by the Court of Appeals * * * To hold that the exercise of discretion may be reviewed by a tribunal other than that upon which it is conferred would pervert and destroy the meaning of the word."

See, also, *Wright v. Securities and Exchange Commission,* 112 F. (2d) 89, 95 (C. C. A. 2d).

But there is another class of cases in which the function to be performed by the repositary of the discretionary authority is, in a sense, different and the field of action circumscribed so that under stated circumstances a positive duty is imposed. *Fox Film Corporation v. Trumbull,* 7 F. (2d) 715, was an attack on a state law which imposed a tax on moving picture films imported into the state for exhibition. Educational and certain other types of films were exempted from payment of the tax. As to these the commissioner was authorized to issue permits for delivery of the films without the payment of any tax, and it was provided that "any permit so granted may be canceled within the discretion of the commissioner, and, in case of such cancellation, the tax due thereon shall be paid by the exhibitor". It was claimed that this provision invested the commissioner with arbitrary power. But the court held that the discretion vested in the commissioner was an administrative discretion to deter-

mine as a question of fact whether the particular film did or did not come within the exempt class. The court said:

> "He must act in conformity with the intent and provisions of the statute. * * * Whether a film belongs or not to the class of films which must be registered, and must pay the tax, is a question of fact. The function of the commissioner is limited to determining whether a film comes within the class that must be registered and must pay the tax. In determining that question, he must of course exercise his discretion or his judgment. It would seem that a Legislature may consistently with the federal Constitution delegate to an administrative officer or officers the determination of such a question."

*Board of Supervisors of Rock Island County v. United States,* 4 Wall. 435, 18 L. ed. 419, was a proceeding in mandamus to compel the supervisors of a county to levy a tax of a sufficient amount to pay a judgment held by the plaintiff against the county. A state statute provided "that the boards of supervisors * * * in such counties as may be owing debts which their current revenue under existing laws is not sufficient to pay, may, *if deemed advisable,* levy a special tax" (italics added) to raise funds for the payment of such debts. The supervisors contended "that the authority thus given involves no duty; that it depends for its exercise wholly upon the judgment of the supervisors, and that judicial action cannot control the discretion with which the statute has clothed them." But the Supreme Court of the United States held otherwise, saying:

> "The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individ-

ual right calls for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.

"In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to 'impose a positive and absolute duty.' "

Largely in reliance on the foregoing decision and in application of the principle it enunciates, the Supreme Court of North Dakota decided the case of *Pearce v. North Dakota Workmen's Compensation Bureau,* 67 N. D. 512, 274 N. W. 587, which involved the construction of a statute much like the one here under consideration. The statute provided:

"All original claims for compensation for disability or death shall be made within sixty days after injury or death. For any reasonable cause shown the bureau may allow original claims for disability or death to be made at any time within one year." (Comp. Laws Supp. 1925, § 396a15.)

The bureau had rejected a claim because it was not filed in time. The claimant appealed to the district court under a statute which, as construed, authorized that course, and provided that on such appeal the claimant is entitled to a trial "in the ordinary way". The district court found that the claim was a meritorious one and that, for various reasons not necessary now to be stated, the claimant was unable to file his claim within the sixty-day period. That court nevertheless held against the claimant, being of the opinion that the

discretion of the bureau was not subject to review. The Supreme Court reversed. The court said:

"While the statute uses words permissive in form, it is dealing with a matter which involves rights. The statute in its very essence imports the use of discretion, and, therefore, when the situation arises where judicial discretion can be exercised in but one way, the word 'may' is in fact peremptory. * * * Where public officers are authorized to perform an act for others which benefits these others, the officers are bound to perform the act. The power is given to them, not for their own, but for the benefit of those in whose behalf they are called upon to act."

After quoting from *Board of Supervisors v. United States,* supra, the court continued:

"The statute we are considering must be construed as placing upon the bureau the absolute duty to allow a claim to be filed after sixty days and within one year from the injury if a reasonable cause is shown why the claim was not filed within the specific sixty-day period. Whether the ground for the delay in filing the claim is reasonable is a question of fact. 71 C. J. 1165. If the claimant shows that he has a reasonable cause for not filing his claim within the sixty-day period, he has a right to participate in the fund if his claim is meritorious. This duty on the part of the bureau gives rise to a corresponding right which the claimant is entitled to exercise and enforce."

■ If the construction of the statute suggested by counsel for the commission is to be followed, then the foregoing authorities are without application, for under that construction the commission, having a free and unhampered discretion, may decide as it wishes, governed only by its own sense of right and wrong. We are not persuaded that this was the legislative intention. Obedience to the rule of liberal construction requires

us to hold otherwise, and, even apart from that rule, on a fair reading of the language used, we are satisfied that the legislature intended that the discretion of the commission was to be guided by the sufficiency of the showing, and that, in view of the legal principles to which we have adverted, when the facts found constitute a valid reason for the failure to make a timely filing, the commission is not at liberty to refuse the relief which it is the obvious purpose of the statute to afford in meritorious cases. The legislature, in our opinion, did not intend that the benefits of the Act, in a case of this kind, "should be withheld or enjoyed at the caprice or will of the commission." *Chebot v. S. I. A. C.*, 106 Or. 660, 668, 212 P. 792.

*Second.* As above stated, the plaintiff, pursuant to the appeal provisions of the Act, appealed to the Circuit Court from the order of the commission rejecting his application, and had a trial *de novo* with a jury as in other cases arising under the Act. By appropriate motions at the trial counsel for the commission challenged this procedure and has assigned as error the adverse rulings of the court thereon.

The commission contends that the right of appeal granted by the statute is not available in this class of cases and that the plaintiff's remedy is by mandamus or writ of review to correct an abuse of discretion.

By the provisions of § 102-1773 and § 102-1774 (as amended by Oregon Laws, 1945, Ch. 303), O. C. L. A., an appeal to the Circuit Court, with the right to trial by jury upon any question of fact, is authorized after a final order of the commission upon an application for rehearing of "any order, decision or award pertaining to any claim." Section 102-1771 (d) provides that "there shall be no right of appeal from any order or award made by the commission on its own motion",

but, otherwise, there are no expressed exceptions to the right to appeal from a final order of the commission. It is not questioned that the commission's order from which the plaintiff appealed is an "order" or "decision", nor that it is a final order, made after a petition for rehearing had been filed and denied. It is certainly as much a final order as a decision that no claim had ever been filed, held appealable in *Rohde v. S. I. A. C.*, 108 Or. 426, 440, 217 P. 627. And we find nothing in the statute which authorizes us to say that this particular type of final order is to be treated differently from any other. It is suggested, however, that it is not "any order or decision *pertaining to any claim*", but that is a refinement which we cannot accept. We are not told what the order pertains to if not to a claim.

■ While it may seem incongruous to some that a jury should be permitted to sit in judgment to review the action of the commission in a mattter of this kind, there can be no doubt of the power of the legislature to authorize such procedure, and, when once it is determined that the legislature has so ordained, that must be an end of the matter so far as the courts are concerned. "The right of appeal does not depend upon whether the determination appealed from involves the exercise of discretion by the tribunal rendering the decision, but upon the statute creating the right to appeal  *  *  *" *Chebot v. S. I. A. C.*, supra. To the same effect is *Grant v. S. I. A. C.*, 102 Or. 26, 201 P. 438. Much of what is said in the opinion in that case as to the right to appeal from a discretionary order of the commission is applicable here. And see, *Benson v. S. I. A. C.*, 108 Or. 565, 572, 215 P. 878. This court assumed in the Landauer case that the case had been properly appealed to the Circuit Court.

The discussion in the commission's brief of the usual

method of judicial review of the decisions of administrative tribunals is irrelevant in view of the provisions of the statute. It is to be remembered that the State Industrial Accident Commission does not function like many other administrative tribunals which are required by statute to make findings of fact after a hearing and whose decisions on questions of fact are final if there is substantial evidence to support them, judicial review being upon the record made before the commission. That is the character of statute, for example, under which the Unemployment Compensation Commission functions. See §§ 126-709, 126-710, 126-711, O. C. L. A.; *Journal Publishing Co. v. S. I. A. C.,* 175 Or. 627, 660, 155 P. (2d) 570, and cases there cited. The Workmen's Compensation Law contains no such provisions. The plaintiff here was not given a hearing in the accepted sense of that term. He was told to furnish affidavits, which he did, and to submit himself for examination to a physician designated by the commission, which he likewise did. But he was not given an opportunity to cross-examine the physician nor to offer testimony in the ordinary way. This being the procedure—and no doubt proper procedure under the statute—it is not difficult to hold that the appeal provisions of the statute were intended to apply to a case like this in order that there might be some tribunal before which a claimant would be accorded a full hearing with the right to examine and cross-examine witnesses. And there is no room for the suggestion of counsel for the commission that "the court must necessarily be in the position of looking at the record made before the commission to determine whether or not *as a matter of law* based on that record there has been an abuse of discretion." There is no "record" of the kind contemplated by the suggested procedure.

■ The appeal for which the statute provides is not an appeal in the conventional sense. "The term 'appeal', in the act under consideration, is not used in the restricted sense of an appeal from an inferior court to a superior court but rather in the sense of calling upon a competent court for determination of the claim." *Roles Shingle Co. v. Bergerson*, 142 Or. 131, 135, 19 P. (2d) 94. In substance the procedure does not differ materially from that in other jurisdictions where provision is made for bringing suit to set aside the decision of the board or commission. See, e. g., Texas Rev. Civ. Stat. (1925), Art. 8307, § 5.

Counsel for the commission are in error, we think, when they say that "there is no question of fact for a jury to determine" in a case like this. The determination whether a "sufficient showing" has been made to excuse the failure to file a claim within the statutory time involves the decision of a question of fact. *Pearce v. North Dakota Workmen's Compensation Bureau*, supra; *Caspar v. East Providence Artesian Well Co.*, 49 R. I. 8, 139 Atl. 470; *Desrochers v. Atwood-Crawford Co.*, 47 R. I. 116, 131 Atl. 48; *Donahue v. Sherman's Sons Co.*, 39 R. I. 373, 98 Atl. 109, L. R. A. 1917A, 76; *Union Shipbuilding Co. v. Praviewski*, 156 Md. 412, 144 Atl. 339; *Amburn v. Employers' Liability Assurance Corp., Ltd.*, (C. C. A. 5) 77 Fed. (2d) 749; *Marshall Construction Co. v. Russell*, 163 Tenn. 410, 43 S. W. (2d) 208; *Wardwell's Case*, 121 Me. 216, 116 Atl. 447; *Consolidated Underwriter's v. Pruitt*, (Tex. Civ. App.) 180 S. W. (2d) 461; *Consolidated Underwriters v. Seale*, (Tex. Civ. App.) 237 S. W. 642, 78 A. L. R. 1252; *Texas Employers' Ins. Asso. v. Clark*, (Tex. Civ. App.) 23 S. W. (2d) 405; *Moore v. Naval Colliery Co., Ltd.*, 5 Butterworths' Workmen's Compensation Cases 87. In

the last cited case the matter was put thus by Farwell, L. J., op cit. (p. 95):

> "I am of the same opinion. The only question for us is a question of law, whether the failure to make the claim within the period mentioned was occasioned by reasonable cause.
>
> "The facts which go to show whether that cause is or is not reasonable are for the judge of first instance, and are not reviewable by us. Whether those facts constitute reasonable cause, or not, is a question of law for us; for example, a man says, 'I have married a wife, and therefore I could not', that is a fact whether he is married or not; whether that is reasonable cause or not is a matter of law to be considered by the judge of first instance, and then in review by us. Here the learned County Court Judge, having found the facts, has treated the conclusion as a question of law, and I think he was right in so doing."

While the statutes of the various states differ both in respect of the terms used to describe what will be deemed an excuse for delay, and of the prescribed procedure before the administrative board or commission and on appeal, the applicability of the decisions just cited is not for that reason affected. "Sufficient showing", "reasonable cause", "good cause", "accident, mistake or unforeseen cause", when used in this connection, mean substantially the same thing. And whether the administrative body's decision on questions of fact is made final under the particular statutory provisions, or may be reviewed by a judge or a jury, either on a trial *de novo* or otherwise, the nature of the question remains inherently the same.

■ We think, therefore, that the appeal provisions of the statute apply to this case, and, since there were questions of fact to be determined, the plaintiff was entitled to a jury trial.

*Third.* We come next to the question of the sufficiency of the evidence. Briefly stated, the claim of the plaintiff is that he sustained a disabling injury as the result of a drop from a springboard while he was engaged as a logger in falling a tree; that, whereas in fact the hip joint bone in his right leg was fractured in the accident, he did not know the cause of his disability until nearly a year afterwards for the reason that he was advised by several physicians whom he consulted that he was suffering from sciatic rheumatism; that finally he consulted a physician who caused an X-ray picture to be taken of his hip and discovered the fracture and informed the plaintiff about it, whereupon plaintiff promptly presented his claim to the commission. In short, plaintiff contends, as alleged in his complaint, that "ignorance of his true condition is a reasonable cause for which his omission should be excused." We think that these facts, if established, would constitute a "sufficient showing" within the meaning of our statute.

In Rhode Island the workman is required by the statute to give notice of the injury to his employer within thirty days after the happening thereof, but a failure to give such notice is excused if it is "due to accident, mistake or unforeseen cause". In *Donahue v. Sherman's Sons Co.,* supra, these words were held to mean the same thing as "reasonable cause" and that "certain circumstances in law present a case of accident, mistake or unforeseen cause, but whether such circumstances exist in a particular case is a question of fact. Mental or physical disability which prevents a man from protecting his rights, or severe illness the ordinary tendency of which is to seriously impair the natural alertness of a man in guarding his interests and attending to his business are generally held to

amount in law to accident or unforeseen cause.'' In that case the claimant was held to be excused from giving the statutory notice because of the serious condition of illness which he experienced during most of the thirty-day period. In *Desrochers v. Atwood-Crawford Co.*, supra, also a Rhode Island decision, the workman was held excused because he did not realize at first that the injury he had sustained was other than trivial. Thereafter his physical condition was such that it would be unreasonable to say that he should have turned his mind to business of any nature. In the third of the Rhode Island cases which we have cited, *Caspar v. East Providence Artesian Well Co.*, supra, the claimant, although suffering from an injury, thought that his illness was caused by drinking impure water, and this was held to be a reasonable cause for failure to give the statutory notice. Other cases in which the courts have held that the workman's ignorance of the fact that he had sustained a compensable injury excused his failure to give notice to his employer or file his claim within the statutory time are: *Wardwell's Case*, supra; *Marshall Construction Co. v. Russell*, supra; *Consolidated Underwriters v. Pruitt*, supra (where the claimant relied on the advice of physicians); *Hay v. Swiss Oil Company*, 249 Ky. 165, 60 S. W. (2d) 385; *Maryland Casualty Co. v. Robinson*, 149 Va. 307, 141 S. E. 225. See cases cited in annotation, 78 A. L. R. 1249, ''Excuses for want or of defect in notice''.

It appears from the evidence (the substance of which was before the commission at the time it acted) that on November 21, 1944, the plaintiff Tice was employed as a faller by the Coast Range Timber Company, which was carrying on a logging operation in the Coast Range Mountains of Oregon. Tice was then sixty-three years of age. At the time of the accident he and his

partner, Madden, were felling a tree on a steep hillside. Tice was working on a springboard ten or eleven feet from the ground on the downhill side. As the tree started to fall he dropped to the ground, catching the board with his hands to break the force of his fall; but his body turned in the air and he hit the ground with his full weight on his right foot on the upper hillside. After running a short distance to escape the falling tree he noticed that his right leg was numb. He rested for a half hour or so before resuming work. He finished out that day's work, and also worked the next day, when he quit, expecting to go out on another job in a day or two. He did not report the accident to the timekeeper when he quit his job.

He has not worked since that day. He became ill with the flu, and having recovered, on December 8, 1944, consulted Dr. W. P. Williams, an osteopathic physician and surgeon of Tillamook. He told Dr. Williams that he had had the flu two weeks previous to that time, but continued to work and that ''it was bothering him in hip and down the right leg.'' He said nothing of having had an industrial accident, and Dr. Williams diagnosed his condition as an ''acute sacroiliac sprain, with secondary sciatica''. He had treated Tice for various ailments previously, but had found nothing wrong with his right leg.

The plaintiff's condition did not improve under Dr. Williams' treatment and he next consulted Dr. A. N. Sager, a massotherapist of Centralia, Washington, whither he had gone to live with his family. This was on September 10, 1945. He told Dr. Sager that he had been injured when he jumped off a springboard while working in the woods felling timber, and Dr. Sager gave him treatments for sciatic rheumatism and an

injured hip. The treatment consisted of massage and medical gymnastic exercises from which Dr. Sager concluded that Tice was suffering from a fractured bone or injured ligament, and that the injury brought about his sciatic rheumatism.

On September 27, 1945, Tice consulted Dr. Henri L. Pettit, a Centralia physician, who treated him for rheumatism, which Tice said he was suffering from. He told Dr. Pettit nothing of an industrial accident.

Sometime in September, 1945, he also consulted Dr. G. F. Burdette, an osteopathic physician of Centralia. He told Dr. Burdette about the accident, and the doctor diagnosed his trouble as "strained back and a slipping in the sacroiliac articulation, pain extending down the leg (right) sciatica."

On October 29, 1945, he was examined by Dr. George F. Parke, another Centralia physician, who had an X-ray taken of his pelvis, which revealed the condition from which he was suffering "perthes or slipped epiphysis". He told Dr. Parke that he had been well until about a year before when he had an accident, since which he had developed progressive weakness and lameness in his right leg. Dr. Parke recommended to Tice that he consult an orthopedic specialist.

The plaintiff executed his claim for filing under date of November 6, 1945, and on November 8, 1945, presented it to the commission. The commission's reason for rejecting it, as stated in its order, was "that said claim was not filed within three months after the date upon which the alleged accident occurred." Nothing was said about the sufficiency of the showing.

The diagnosis of Dr. Parke is confirmed by the report to the commission and the testimony on the trial

of Dr. Charles R. McClure, the physician to whom plaintiff submitted himself for examination at the suggestion of the commission. It is conceded that there is evidence that the accident on November 21, 1944, was the cause of the injury to plaintiff's right hip. But Dr. McClure, an orthopedic surgeon of the highest standing and long and wide experience, was of the opinion, and so advised the commission, that the condition he found in the right hip, which he described as a "very marked distortion and trouble in that hip and hip joint", had been developing for many years and was not caused by the accident. It may be surmised that it was in reliance on the opinion of Dr. McClure that the commission acted.

■ However that may be, the question of the cause of the plaintiff's disability was for the jury. There was abundant evidence that he was able to do the rugged work of a logger before the accident, and unable to do so thereafter, and also medical testimony that the accident could have at least "precipitated" the plaintiff's condition of disability.

■ In that situation, a question of fact was presented by the evidence as to whether the plaintiff had made a "sufficient showing", that is, had reasonable cause for his failure to file a claim within the three-months period. The court submitted to the jury the question of whether the plaintiff knew before the expiration of three months after the accident that his disability was due to the accident or to rheumatism or to some other cause, as the test for determining the sufficiency of the showing, instructing the jury that the plaintiff had the burden of proof. There were proper instructions as applied to the facts of this case. The jury would have been warranted in finding that

the plaintiff had been misled by the medical opinions he received into attributing his disability to other causes than the accident, and that he was not aware of the facts until he was informed in October, 1945, that the X-ray picture taken at that time showed an injury to his hip, or at least until the time in September when he consulted Dr. Sager.

We think, therefore, that the defendant's motion for a directed verdict based on the insufficiency of the evidence was properly denied.

■ *Fourth.* The defendant assigns as error the court's rulings in refusing to give requested instructions. One of these would have required the plaintiff to prove that "the findings of fact (of the commission) are contrary to the admitted or clearly proven facts". For reasons which follow from our views previously expressed as to the proper procedure in this class of case, there was no error in refusing to give this instruction.

The other request would have made the test of whether the plaintiff had reasonable cause for not filing his claim in time, whether "he knew that he was suffering any disability as the result of such accident within such period after said alleged accident as would have enabled a reasonably prudent man to have filed a claim within said statutory period." What a reasonably prudent man would have done is the test applied by the Texas court. *Texas Indemnity Ins. Co. v. Cook,* (Tex. Civ. App.) 87 S. W. (2d) 830. We think, however, that the court's instruction that the plaintiff could not recover if he knew that the alleged accident was the cause of his disability before the expiration of three months after the date of such accident was at least as favorable to the defendant as the one requested.

■ The plaintiff is allowed an attorney's fee of $250.00 for the services of his counsel in this court. Oregon Laws 1945, Ch. 303, p. 458.

The verdict of the jury found specially that the plaintiff sustained the accidental injury alleged, and the judgment of the court ordered the commission to accept the claim and to fix plaintiff's compensation in accordance with the Workmen's Compensation Law.

The judgment, as entered, is affirmed